ARMSTEAD, WIDOW AND DEPENDENT OF ARMSTEAD, DECEASED *v.* SOMMER AND OAKLEY, DOING BUSINESS AS HOYT MACHINE COMPANY.

[No. 18,731.   Filed January 23, 1956.   Rehearing denied March 6, 1956.]

*Samuel B. Huffman* and *Thomas J. Corey,* of Indian-
apolis, for appellant.

*Murray, Mannon, Fairchild & Stewart, Richard W. Guthrie* and *James L. Murray*, all of Indianapolis, for appellees.

KENDALL, J.—The question presented by this appeal is: Was appellant's decedent injured as the result of an accident causing his death arising out of and in the course of his employment with appellee?

Harry Armstead, appellant's decedent, was engaged in duties as a maintenance man on an hourly basis for appellees on January 13, 1954. John M. Young was employed in appellee's plant. Among the duties of Mr. Young was that of pushing steel through the plant on carts, and, in so doing, was required to push the cart down narrow aisles between machines. On the day in question, the deceased was welding and was using a "truck" which was loaded with welding accessories which protruded into one of the narrow aisles. As Mr. Young approached the decedent with his cart, under the above circumstances, the evidence discloses that the decedent called Mr. Young a vile name, and thereafter blows were exchanged, during which fight Mr. Armstead was hit on the head and died from sustained injuries on January 21, 1954.

Appellant, as surviving widow, filed claim for compensation for her husband's death, alleging that the decedent died as a result of injuries inflicted upon him by Young, all of which arose "out of" and "in the course of" decedent's employment.

Hearing Member denied award and, upon review by the Full Board, award was made by the majority thereof in favor of appellees, denying appellant compensation. Hence this appeal.

The assignment of error is that the award of the Board is contrary to law.

Appellant's contention is that the undisputed facts

and circumstances which caused decedent's death overwhelmingly indicates that the decedent was working for appellees and that the event which took place arose and occurred out of and in the course of employment and relies upon Section 40-1202, Burns' Ind. Stat., 1952 Repl. Appellant further contends that an employee who is injured or killed by another employee while in the act of performing his duties constitutes an accident arising "out of" and "in the course of" his employment within the meaning of the Act.

The words, "out of", point to the origin and cause of the accident or injury. The words, "in the course of", to the time, place and circumstances under which the accident or injury takes place. The character of the accident, as conveyed by the words, "out of", involve the idea that the accident is in some sense due to employment. It must, however, result from a risk reasonably incident to the employment. A risk may be incidental to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected with the employment owing to the special nature of the employment, and that an injury arises "in the course of the employment", if it occurs while the employee is doing what a man so employed may reasonably do within the time in which he is employed and at a place where he may reasonably be during the time. *Bryant, Adm'x.* v. *Fissell* (1913), 84 N. J. Law 72, 86 Atl. 458; *Union Sanitary Mfg. Co.* v. *Davis* (1917), 64 Ind. App. 227, 115 N. E. 676.

The burden of furnishing proof from which the inference can be reasonably drawn that claimant's injuries were caused by an "accident arising out of and in the course of employment" within the meaning of the Act, rested upon the appellant.

Since it is only in the event there is absolutely no substantial evidence to sustain some necessary fact upon which the award is based that the award will be set aside for the reason assigned, it becomes necessary for us to briefly review the evidence. *Seymour Woolen Mills* v. *Ward* (1934), 100 Ind. App. 108, 192 N. E. 892.

The evidence reveals that as Mr. Young approached a point in the narrow aisle where the decedent was working and where his machine protruded, Mr. Young asked the decedent to move his truck out of his way and that he didn't do it; that after that the decedent said, "Get that thing out of here, you son of a bitch"; that decedent reached over and got a piece of brass and "knocked my hat off and I hit him with this stick at the side of the head after he struck me and then he stepped over on the truck and the truck went forward and he fell backwards and that time hit his head on the machine and he hit me on the side and knocked me clear in the machine, and he had me knocked out and his brother shut off the machine."

There was evidence from a fellow employee that he did not see the first of the fight but, as he turned from where he was working, which was about six feet from the cart where the decedent was, he (the witness) saw deceased crawl over the cart on his hands and knees, slip and fall; that he then regained his balance; picked up a hook resembling a pitchfork, raised it and said to Young, "I'll kill you, you son of a bitch".

The evidence further reveals that the following questions were propounded to Mr. Young, which answers were given:

"Q: You did hit him (decedent) with the stake?
"A: That's right.

"Q: That's after he hit you with the brass bar, wasn't it?

"A: That's right.

"Q: And at the time he was coming at you again, isn't that right?

"A: He was trying to."

Fred W. Sommer, one of the appellees, testified that the decedent, in explaining the fight to him, said that after being bumped by Young, Young grabbed a stick out of the truck and hit him (Armstead) in the head, and that the version of the fight as given by employees Bryson, Pickerel and Johnny Bryson was different; their story being that Mr. Young bumped Armstead in the aisle which provoked him and that Armstead took after Young and that Young hit him in self defense, and then Armstead pushed Young into an automatic screw machine and there Mr. Young grabbed the stick and hit Armstead. Evidence further reveals that when Young was on the machine that decedent was pounding him using his fists.

Undoubtedly, there is a sharp conflict in the evidence. We cannot agree with appellant's contention that the evidence is undisputed and that it is shown conclusively that Young was the aggressor. It is well settled that it is the prerogative of the Board to determine from all of the evidence whether in this case Mr. Armstead's fatal and accidental injuries arose out of and in the course of his employment and where there is competent evidence to support the finding of the Board, the award will be sustained. *Magazine* v. *Shull* (1945), 116 Ind. App. 79, 60 N. E. 2d 611. This court is not at liberty to weigh the evidence on such an appeal under the facts presented. *Cunya* v. *Vance* (1935), 100 Ind. App. 687, 197 N. E. 737; *The Studebaker Corp.* v. *Jones* (1937), 104 Ind.

App. 270, 10 N. E. 2d 747; *Goshen Veneer Co.* v. *Cozzi* (1931), 93 Ind. App. 160, 176 N. E. 634.

There is evidence of probative value from which the Board could find that the first evidence indicating any trouble was when Young was called a vile name by deceased, which was followed up with an attempt to hit Young with a brass bar, and, thereafter, Young struck back at decedent with a wooden stick and then, while Young was trying to get away, he was knocked into the automatic screw machine which was then in operation.

Appellees contend that under the evidence it is shown that the deceased was the aggressor, and, where an aggressor is injured in a fight, such as the one described, or dies from injuries received, even though in the employ of some individual or corporation, there can be no recovery.

In determining whether decedent's injuries causing his death arose out of his employment, it is necessary to determine whether or not the decedent was the aggressor.

Appellant cites the following cases to substantiate his contention. *Inland Steel Co.* v. *Flannery* (1928), 88 Ind. App. 347, 163 N. E. 841; *Fey v. Bobrink* (1926), 84 Ind. App. 559, 151 N. E. 705; *American Steel Foundries* v. *Melinik* (1920), (T. D. 1921), 74 Ind. App. 617, 126 N. E. 33. The facts of each of the above cases are distinguishable from those under consideration. In the Inland Steel case, *supra,* it is not shown in what manner the fight occurred; neither does the opinion express who was the aggressor. It is true that the affray occurred in the course of the employment, but the court failed to lay down any definite rule of law which is beneficial in this case. In the case of *Fey* v. *Bobrink, supra,* the statement made by the court recog-

nized the rule of law that if an injured party is the aggressor in a fight, he could not collect compensation. The facts of the American Steel Foundries case, *supra*, are similar, but again, there was no finding by the court that the injured person was not the aggressor.

Appellant cites among other cases the following: *Delco-Remy Corp.* v. *Cotton* (1933), 96 Ind. App. 493, 185 N. E. 341; *Polar Ice etc. Co.* v. *Mulray* (1918), 67 Ind. App. 270, 119 N. E. 149; *Furst Kerber Cut Stone Co.* v. *Mayo* (1924), 82 Ind. App. 363, 144 N. E. 857, to substantiate her contention that under the Act a determination of who was the aggressor is not a controlling factor in determining whether or not the accident arose out of and in the course of employment. Again the cited cases are not in point and are not determinative of the point raised. In the Delco-Remy case, *supra,* there was a controversy over work, but the case does not reveal any controversy about who started the fight. In fact, the evidence reveals nothing as to who the aggressor was. In the Polar Ice case, *supra,* the question was involved as to whether the injured party was the aggressor, but, as we understand the case, if there was an aggressor, it was not the injured party and compensation was rightfully awarded. There was a controversy between three workmen in the case of *Furst Kerber Cut Stone Co.* v. *Mayo, supra,* resulting in the injury of one and there again the court undoubtedly found that the injured party was not the aggressor.

This similar question has been under consideration not only in Indiana but in many jurisdictions and courts generally hold that an employee injured in a fight with a fellow employee in which the employee is found to be the aggressor cannot have compensation under the Workmen's Compensa-

tion Act. *Fischer* v. *Industrial Com.* (1951), 408 Ill. 115, 96 N. E. 2d 478; Schneider, Workmen's Compensation Text, Vol. 6, p. 179, sec. (g); *Jackson* v. *Comp. Com'r.* (1944), 127 West Va. 59, 31 S. E. 2d 848; *Fulton Bag & Cotton Mills* v. *Haynie* (1931), 43 Ga. A. 579, 159 S. E. 781. The reason being that an employee, by initiating hostility with a co-employee, takes himself out of the course of his employment, and, to allow an aggressor to recover, would be contrary to all senses of justice and law. *Wooley* v. *Minneapolis Equipment Co.* (1923), 157 Minn. 428, 196 N. W. 477.

The injuries received by Mr. Armstead resulting in his death under the circumstances of this case was not a peril of his services as being rendered to appellees nor reasonably incident thereto. Such injuries resulting in his death arose from a voluntary act on the part of the deceased which was unnecessary to his employment and was not in the advancement of the interests of appellees nor connected therewith. Actually, it was nothing more or less than the gratification of his personal feelings upon being bumped by a cart in the narrow aisle where Young was required to push steel. Under the circumstances and evidence presented, no reasonable inference can be drawn by this court which legitimately or fairly demonstrates that the injury of Armstead was an incident of his work. There was no causal connection between the work of welding and the injury which resulted from the independent and affirmative act of decedent. This seems to have been clearly an injury which did not arise "out of" the employment. It was rather outside the employment and one which grew out of a situation inaugurated by the deceased himself and for his own purpose. The fact that the affray occurred during the hours when his services belonged to the ap-

pellees does not give it the character of having been done in the course of decedent's employment.

In the case of Union Sanitary Mfg. Co., *supra*, this court reversed an award of the Industrial Board because the evidence showed that Davis was the aggressor in the controversy. In explaining whether the injury arose out of and in the course of employment, the court said:

"But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." See cases cited. See also *Mueller* v. *Klingman* (1919), 73 Ind. App. 136, 125 N. E. 464; *Payne, Director* v. *Wall* (1921), 76 Ind. App. 634, 132 N. E. 707.

In the case of *Davies* v. *Robinson* (1932), 94 Ind. App. 104, 179 N. E. 797, the question of aggressor was considered by this court. The award of the Industrial Board was reversed upon the basis that the injured employee was the aggressor, and, in deciding that issue, the court said:

"Before an injury is compensable under the Indiana Workmen's Compensation Act, it must not only be due to an accident arising in the course of the employment *but it must also arise out of the employment*. There must be a causal connection between the employment and the injury for which compensation is sought. When the appellee thus struck Leslie first, under the circumstances as

shown by the evidence, even though he had been grossly insulted by Leslie, he was guilty of assault and battery. He had inaugurated a situation for his own purpose of avenging a personal insult to himself. He had stepped aside from his employment and had engaged upon his own private mission. Under such circumstances, it cannot be said that the injury he received in the fight which he himself started arose out of his employment. See *Talge Mahogany Co.* v. *Beard* (1930), 90 Ind. App. 611, 169 N. E. 540; *Mercantile-Commercial Bank, Rec.* v. *Koch,* (1925), 83 Ind. App. 707, 150 N. E. 25; . . . *Stillwagon* v. *Callan Brothers, Inc.* (1918), 183 App. Div. 141, 170 N. Y. Supp. 677."

In view of the general rule of law that this court will not weigh the evidence when there is any competent evidence to sustain the finding and award of the Board, and that, where facts proven are such that reasonable men might draw an inference therefrom that would sustain the finding made by the Board, this court cannot say that the injuries received by Mr. Armstead resulting in his death were a peril of the services rendered appellees or reasonably incidental thereto, and that they did not arise from his voluntary act.

Applying the principles of law announced, together with the facts of this case, the injury causing the death of the decedent did not arise out of the employment of said decedent with the appellees as such phrase is used and meant in the Act, and the award is not contrary to law.

Award affirmed.

NOTE.—Reported in 131 N. E. 2d 340.