STURGIS, Chief Judge.
Tucker Taxi, Inc., an employer, and Maryland Casualty Company, its insurance carrier under the Workmen’s Compensation Act, F.S.A. § 440.01 et seq., the petitioners, bring this proceeding in certio-rari to review an order of the Florida Industrial Commission which reversed an order of a Deputy Commissioner denying *190 dependency benefits to the widow and children of Ernest Joe Schofield, deceased, claiming under the Act.
Schofield was employed as a taxicab driver by Tucker Taxi, Inc. On the Saturday of his death a fellow-employee and superior, one McNally, became informed that Schofield, then on duty, had been speeding in employer’s taxicab. Being acquainted with Schofield’s employment history of having on several occasions been reprimanded or discharged for drinking while on duty, McNally located and intercepted Schofield to ascertain whether he had been drinking. Upon Schofield’s assurance that he had not been drinking and after determining, by following the taxicab operated by Schofield, that if he had in fact been drinking it was apparently not affecting his driving, McNally returned to the company headquarters.
Later in the day Schofield checked in at headquarters at the end of his tour of duty. At that time one Tucker, also a fellow-employee and superior of Schofield, determined from Schofield’s mannerisms and actions that he had been drinking. McNally, who was standing nearby, also observed Schofield’s actions, was convinced that Schofield was intoxicated, and confronted him with an accusation to that effect. At that point Schofield inquired of McNally, who was employer’s manager, whether he was fired, and McNally replied in the affirmative, at the same time inviting Schofield’s attention to the posted company rules, one of which provided that an employee drinking on the job would be automatically discharged.
Schofield then requested to be paid his accumulated wages and was informed that it would be necessary for him to wait until the following Monday because the bookkeeper had gone home for the weekend. Thereupon he became so fractious and used such vulgar and obscene language that Mc-Nally attempted to escort him to his car. As they reached the office door Schofield made an unprovoked assault upon McNally with his fists. Tucker intervened and terminated this assault, then attempted to escort Schofield to his car in the public street, McNally, standing in the office doorway, saw Schofield assault Tucker and went out on the street to the scene, whereupon Scho-field observed McNally, turned Tucker loose, and for the second time assaulted Mc-Nally, who countered with several blows upon Schofield with his fists. In the course of that encounter Schofield staggered, slumped to the ground, was taken to the hospital and pronounced dead upon arrival. It is because of this unfortunate death and under these circumstances that Schofield’s widow and children sought dependency benefits under the Workmen’s Compensation Act.
Testimony of medical experts reflects that Schofield had been suffering for some time with a degenerative heart condition known as Brown’s Atrophy, which had produced á generally weakened physical condition. While death unquestionably resulted from the blows struck by McNally in the encounter, the uncontradicted medical testimony is that the trauma from the blows was slight and would not have caused death in the absence of the degenerative heart condition.
The Deputy Commissioner found (1) that Schofield was not intoxicated to the extent that he had abandoned his employment and that he was within the course of his employment at the time the altercation commenced, (2) that he was an employee of the taxicab company at the time of the injury and death, (3) that the altercation was instigated by Schofield and his actions were probably aided by his degree of intoxication, (4) that he was not within the scope of his employment when he attacked McNally, (5) that he was acting in the role of aggressor and was attempting to injure his superior (McNally) when the injury and death occurred, and (6) that the injury and death cannot be said to be incidental to the employment but is directly *191 connected, in the language of the Deputy’s •order, with the “employee’s deliberate act of aggression.” (Emphasis supplied.) On the basis stated, the Deputy Commissioner dismissed the claim.
Section 440.09(3), Florida Statutes, F.S.A., provides:
“No compensation shall be payable if the injury was occasioned primarily by the intoxication of the employee or by the willful intention of the employee to injure or kill himself or another or by his willful refusal to use a safety appliance or observe a safety rule approved by the commission or required by statute, and brought prior to the accident to the knowledge of the employee.”
The order of the Full Commission reversing the order of the Deputy Commissioner is bottomed on the proposition that his findings do not reflect a “willful intention” to injure another — the defense contemplated by the statute- — -and, further, that the bare finding that the employee had been the “aggressor” was not sufficient to bar recovery. This is a play on semantics with which we cannot agree. The term “intention” as used in the statute means an act that is premeditated and deliberate. The finding of the Deputy Commissioner that Schofield was attempting to injure his superior and that this was a deliberate act of aggression is tantamount to a finding of willfulness in that behalf, and eliminates instinctive or impulsive acts. The right to compensation turns on the question of whether Schofield made an assault upon McNally with the willful intention to injure or kill him. Florida Forest and Park Service v. Strickland, 154 Fla. 472, 18 So. 2d 251.
It is generally held, apart from the express statutory defenses provided by our statute, that the aggressor in an admittedly work-connected fight cannot recover compensation. Our statute does little if anything more than to reiterate the rule of the case law to the effect that a subordinate employee engaged in aggression against his superior thereby performs no service and no duty for his employer, and the hazard that such subordinate employee may receive injury from his own acts of aggression against his superior are not a risk of his employment and, therefore, do • not arise “out of” and “in' the course of” his employment. Vollmer v. City of Milwaukee, 1948, 254 Wis. 162, 35 N.W.2d 304; Armstead v. Sommer, 1956, 126 Ind.App. 273, 131 N.E.2d 340; Federal Underwriters Exchange v. Samuel, 1942, 138 Tex. 444, 160 S.W.2d 61; Lindsay v. Hoffman Beverage Co., 1941, 19 A.2d 824, 19 N.J.Misc. 356; Fischer v. Industrial Commission, 1951, 408 Ill. 115, 96 N.E.2d 478; Staten v. Long-Turner Const. Co., Mo.App.1945, 185 S.W.2d 375.
 It is apparent that there was competent substantial evidence upon which the Deputy Commissioner denied recovery and that in doing so he correctly applied the law. The Full Commission was therefore without authority to disturb his order. United States Casualty Co. v. Maryland Casualty Co., Fla., 55 So.2d 741.
The petitioning employer and its insurance carrier also insist that the Deputy Commissioner should have found, as a matter of law, that the employer-employee relationship had been terminated prior to the altercation and that the injury was therefore not compensable. We find merit in this contention but in view of our conclusions upon the critical point for review, it is unnecessary to explore this phase of the appeal.
Certiorari is granted, the order of the Full Commission is quashed, the order of the Deputy Commissioner is reinstated, and this cause is remanded for proceedings consistent herewith.
CARROLL, DONALD, and WIGGIN-TON, JJ., concur.