**Marguerite L. BERRYMAN, Appellant (Plaintiff Below),**

v.

**FETTIG CANNING CORPORATION, Appellee (Defendant Below).**

**No. 2–779A223.**

Court of Appeals of Indiana, Third District.

Feb. 4, 1980.

Rehearing Denied April 2, 1980.

---

Thomas C. Douglas, Anderson, for appellant.

Theodore L. Locke, Jr., Locke, Reynolds, Boyd & Weisell, Indianapolis, for appellee.

HOFFMAN, Judge.

This is an appeal from a decision of the Industrial Board denying workmen's compensation benefits to claimant-appellant Marguerite L. Berryman. Her sole assignment of error is that the award in favor of defendant-appellee Fettig Canning Corporation is contrary to law.

The award of the single hearing member which was adopted by the Board reads in pertinent part as follows:

## "STIPULATIONS

At the hearing, it was agreed by and between the parties and stipulated as follows:

1. That on or about September 30, 1977, Plaintiff was an employee of the Defendant at an average weekly wage of $100.00.

2. That on said date, Plaintiff got into an altercation with another employee, as a result of which she broke her right shoulder; that she has received treatment from Dr. Paul L. [sic] Ramsey.

3. That no temporary total disability has been paid.

4. That no medical expenses have been paid.

5. That the medical bills may be stipulated, in the event there is a finding of liability.

6. That the parties offer into evidence the medical Deposition of Dr. Paul A. Ramsey, and the same is accepted and admitted into evidence.

7. That a dispute arose between the parties as to Defendant's liability, if any, and though a good faith effort was made to settle it, the dispute remains unresolved.

\* \* \* \* \* \*

## "FINDINGS

The Single Hearing Member, after having heard the stipulations by the parties of the facts in said cause, all of the evidence adduced, and having reviewed the entire record and being duly advised in the premises therein, now adopts the stipulations and further finds:

1. The Plaintiff was a female, age 59, five feet tall and weighs about 130 lbs.

2. The Plaintiff and three or four other cannery workers ride to and from work with Lucille Cohen, the driver. Mrs. Cohen was age 39, five feet four inches in height and also weighs about 130 lbs. All of them worked at Defendant's tomato cannery.

3. The Plaintiff and the other passengers argued about the Plaintiff being the last to clock out her time card at the end of each work day. All of the workers would leave their work stations at the conveyor belt and go to the washroom, wash and hang up protective aprons, and some would line up to use the limited toilet facilities, then clock out. Plaintiff was accused of making as much as One Dollar ($1.00) per week more than the others by always being the last to clock out.

4. Lucille Cohen, the driver, was made very nervous by the confusion of the continuing arguments on the way home one evening. She told her sister, the last to be dropped off that if the confusion was not stopped during the daily trips, that she was going to stop 'riding' all of them.

5. The morning of the incident, all were preparing to work, either sitting or standing about, awaiting the warning whistle that the conveyor belt was to begin to move and all were to begin work. The sister, during this period, waiting period, informed the Plaintiff that the driver, Lucille Cohen, had said that if Plaintiff did not start clocking out first, that Plaintiff would not have a ride any more. The driver, Lucille Cohen, later denied telling her sister to relay any message.

6. Plaintiff was angered and hurt. Seeing Lucille Cohen, the driver, emerge from the washroom, Plaintiff went up to her and demanded to know why she had not talked directly to the Plaintiff, instead of behind her back and through the sister. She then called her supposed good friend, the driver, an S.O.B. and punched her on the chest.

7. The driver, Lucille Cohen, in a reflex defensive swing struck Plaintiff's right shoulder with her closed fist and Plaintiff fell down from the force of the blow or a push. From the force of the blow or from catching herself in the fall, Plaintiff suffered what was later found to be, a fracture of her shoulder. At the time, she got up, went to the restroom, then returned for a short time to work. Later she reported she was suffering pain to the Defendant's nurse and called her family to take her home. The same day she went to the hospital where she was examined and treated by Dr. Paul A. Ramsey.

8. The Plaintiff suffered an injury diagnosed to be a three part fracture of the proximal right humerus, the greater tuberosity of the right shoulder (the ball of bone insert in the shoulder socket was fractured).

9. The Defendant did not offer nor control any transportation to or from work for its workers.

10. The incident did take place in the course of or during the employment, having occurred after clock-in, apparently, after dawning [sic] protective apron, but before actual work began.

11. The incident did not arise out of the employment, but spring [sic] from Plaintiff's attempt to settle a private grievance about continuing her mode of transportation to and from work. The interests of the other riders in promptly leaving the work premises was not shared by Plaintiff, whatever her motivation or lack of it. While joking or so-called horseplay resulting in injury is a hazard covered by Workmen's Compensation, as interpreted by the Board and the Courts, a voluntary verbal assault or a touching in anger which results in injury to the aggressor, is not and should not be included in those events which are said to arise out of employment. To the contrary, injury to the victim of aggression, would have Workmen's Compensation protection where the worker is injured while in a place where the employment requires the worker to be. But an aggressor is not required to pugnaciously settle the private grievance during or in a place of employment.

12. The injuries suffered by the Plaintiff did, in fact, cause her to be temporarily totally disabled from December 30, 1977 to and including May 30, 1978. However, the work was a temporary job of from sixty (60) to ninety (90) days duration.

13. The medical evidence supports, and the Single Hearing Member so finds, that Plaintiff suffers a permanent partial impairment of 20% loss of use of the right arm.

14. The Single Hearing Member concludes that the weight of the evidence favors the Defendant and is against the Plaintiff.

"AWARD

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Industrial Board of Indiana, that the Plaintiff shall take nothing by virtue of her Form 9 Application heretofore filed November 22, 1977."

■ An allegation that the award of the Board is contrary to law presents for re-

view both the sufficiency of the findings of fact utilized to sustain the award and the sufficiency of the evidence to sustain the findings of fact. *Penn-Dixie Steel Corp. v. Savage* (1979), Ind.App., 390 N.E.2d 203. Claimant maintains there was insufficient evidence that she was the aggressor in the altercation. Alternatively she charges that she had abandoned her aggression prior to the injury. Moreover, she suggests that a finding of aggression on her part does not preclude a right to benefits.

The testimony surrounding this incident was in sharp conflict. Lucille testified that the claimant approached her and demanded to know why she was talking behind the claimant's back. The claimant called Lucille an "s.o.b." and punched her in the chest. Lucille then struck the claimant in the right shoulder with her fist. The claimant fell down and fractured her shoulder.

The claimant, however, testified that she merely touched Lucille lightly on the arm. She explained that her actions were due to the fact that she suffered from a hearing impairment which made it necessary for her to face people in order to understand them. After telling Lucille that she would not have ridden with her had she known how Lucille felt about clocking out as soon as possible, the claimant turned to walk toward her work station when Lucille knocked her down.

█ It is well settled that it is the prerogative of the Board to weigh the evidence and determine whether the claimant's injuries arose out of and in the course of her employment. *Armstead, Widow, etc. v. Sommer et al., etc.* (1956), 126 Ind.App. 273, 131 N.E.2d 340. In the instant case there was sufficient evidence presented from which the Board could conclude that the claimant initiated the fray and struck the first blow. Furthermore the evidence does not lead inescapably to the conclusion that the claimant had abandoned her aggression.

To fortify her assertion that a finding of aggression should not nullify her right to benefits, claimant relies on her testimony that the incident concerned "time cards and riders" and Lucille's testimony that it would not have happened if they did not work there. She submits that this testimony indicates her injury arose out of the employment. In other words, it appears to be her contention that but for the employment there would have been no quarrel, and without the quarrel, the injury would not have been inflicted. This argument was disposed of in *Union Sanitary Mfg. Co. v. Davis* (1917), 64 Ind.App. 227, at 234, 115 N.E. 677, at 678 where it was stated:

"It is not enough for the applicant to say, 'The accident would not have happened if I had not been engaged in that employment, and if I had not been in that particular place?' He must go further and must say, 'The accident arose because of something I was doing in the course of my employment, or because I was exposed by the nature of my employment to some peculiar danger."

█ For an accident to arise out of the employment it must result from a risk reasonably incident to the employment. A risk may be reasonably incidental when it is either an ordinary risk directly connected with the employment or an extraordinary risk which is only indirectly connected with the employment owing to the special nature of the employment. An employee injured in a fight with a fellow employee in which the employee is found to be the aggressor cannot have compensation under the Workmen's Compensation Act. *Armstead v. Sommer, supra.* See also: *Union Sanitary Mfg. Co. v. Davis, supra.* As was stated in *Davies v. Robinson* (1932), 94 Ind.App. 104, at 111, 179 N.E. 797, at 799:

"When the appellee thus struck Leslie first, under the circumstances as shown by the evidence, even though he had been grossly insulted by Leslie, he was guilty of assault and battery. He had inaugurated a situation for his own purpose of avenging a personal insult to himself. He had stepped aside from his employment and had engaged upon his own private mission. Under such circumstances, it cannot be said that the injury he received in the fight which he himself started arose out of his employment."

The injury received by the claimant in the case at bar was not a peril of her services as rendered to the defendant nor reasonably incidental thereto. Her injury arose from a voluntary act on her part which was unnecessary to her employment and was not in the advancement of the interests of the defendant nor connected therewith. Her assault on Lucille was nothing more or less than gratification of her anger at Lucille. Under these circumstances her injury did not arise out of the employment as such phrase is used in the Act and the award is not contrary to law.

Award affirmed.

Affirmed.

GARRARD, P. J., and STATON, J., concur.