BARFIELD, Justice.
The claimant appeals a workers’ compensation order finding that an injury resulting from an assault on the job site by a co-worker was not compensable. We reverse.
The claimant, a laborer at a construction site, sometimes rode with the co-worker (Kirkland) on payday to cash his check and they occasionally bought each other lunch or had a beer together. It was common on the job for men to borrow a few dollars from one another for lunch or gas and the claimant owed Kirkland ten dollars.
On the day of the assault, the claimant took his lunch on the job site with Randall, a heavy equipment operator. Kirkland, who had gone off the job site for lunch, drove up and told the claimant that he wanted the money owed him. Randall testified that when the claimant told Kirkland that he didn’t have the money but would pay him later, Kirkland insisted he be paid immediately, then picked up a piece of “two by” off the ground and struck the claimant with it, breaking his leg. Randall testified that the piece of lumber was from the job site.
Kirkland drove his car to another place on the job site and the claimant limped over to find out why he had hit him. Kirkland told the claimant to get away from him, and the claimant fell to the ground. Kirkland then opened the trunk of his car, took out a piece of “two by two” and hit the claimant several more times. Hartley, a co-worker who did not see the first attack, corroborated the claimant’s version of the second attack.
The deputy commissioner heard the testimony of Randall, Hartley and the claimant, and considered the depositions of the claimant’s doctor and Kirkland. The parties stipulated that the claimant was not the aggressor. In his order, the deputy commissioner found that the claimant’s injury did not occur in the course and scope of his employment, that the altercation was the result of a purely personal matter, and that the employment “did not facilitate an assault that would otherwise have not occurred.” He found that the claimant and Kirkland had a personal relationship which extended beyond the work place and that the claimant owed Kirkland ten dollars. He also found that the claimant was not the aggressor, but concluded that this finding was not dispositive of the issue of compensability.
The claimant moved for rehearing, asserting that while it was undisputed that the argument giving rise to the assault was not work-connected, the work place facilitated the assault because Kirkland used the piece of lumber he picked up on the job site to break his leg. The motion asserted that the order did not contain adequate findings of fact regarding how the claimant was injured, and that the deputy commissioner may have overlooked Tampa Maid Seafood Products v. Porter, 415 So.2d 883, 884 (Fla. 1st DCA 1982), in which under *742 similar circumstances the court found that the work place had facilitated the assault.
After a hearing at which the deputy commissioner indicated confusion regarding the altercation and stated he would have to listen to the tape again, he vacated his prior order and later issued an order in which he made additional factual findings that Kirkland struck the claimant on two occasions: first, “with a piece of wood he picked up from the jobsite,” and a few minutes later, with a piece of wood he took out of his car’s trunk. To his conclusion that the employment did not facilitate the assault, he added the following sentence: “The job site was merely the fortuitous site of the altercation, and that (sic) the attack by Mr. Kirkland upon the Claimant could have just as easily occurred outside the jobsite based upon the personal relationship between Mr. Kirkland and the Claimant which extended beyond the workplace.”
The question presented in this case is what law should be applied in determining whether a claimant’s injury “arose out of” his employment, when it resulted from an assault by a co-worker while the claimant was on the employer’s premises. The only statutory provisions we have to guide us are the “aggressor” rule of section 440.-09(3), Florida Statutes, “No compensation shall be payable if the injury was occasioned primarily by ... the willful intention of the employee to injure or kill himself, herself, or another,” and the presumptions of section 440.26:
Except as otherwise provided in this chapter, in any proceeding for the enforcement of a claim for compensation under this chapter, it shall be presumed, in the absence of substantial evidence to the contrary:
(1) That the claim comes within the provisions of this chapter.
(2) That sufficient notice of such claim has been given.
(3) That the injury was not occasioned by the willful intention of the injured employee to injure or kill himself or another.
The first presumption does not relieve the claimant from proving that the accident arose out of and in the course of his employment. Fidelity & Casualty Company of New York v. Moore, 143 Fla. 103, 196 So. 495 (Fla.1940). However, the general policy in the workers’ compensation law is that, in marginal cases, the result favoring the claimant is preferred. Hacker v. St. Petersburg Kennel Club, 396 So.2d 161 (Fla.1981).
In Florida Forest and Park Service v. Strickland, 154 Fla. 472, 18 So.2d 251 (Fla.1944), the supreme court ruled that the claimant’s right to compensation for an injury resulting from a gun battle with a co-worker turned on whether he was the aggressor, noting that when an employee sustains an injury during the course of his employment, the claim is presumed to come within the compensation act in the absence of substantial evidence to the contrary.
In W.T. Edwards Hospital v. Rakestraw, 114 So.2d 802 (Fla. 1st DCA 1959), the claimant was injured in an altercation with a co-worker. The deputy commissioner determined the injury to be compensable, finding that the altercation took place on the employer’s premises while the claimant was on duty, that it had its origin in an argument concerning two fellow employees, that the argument was unrelated to the employer’s business, and that the claimant was not the aggressor. These findings were affirmed by the Florida Industrial Commission on the theory that the “positional-risk” doctrine applied. This court found that the facts did not support application of the “positional-risk” doctrine, but that there was no reason to strain for application of that doctrine when “the injury occurs during work hours and is the result of an unprovoked assault by a fellow employee who was the aggressor.” Id. at 803. The court noted: “The key to the question of whether Rakestraw suffered a compensable injury lies in the fact, as found by the deputy and supported by the evidence, that he was not the aggressor in the altercation.” Id. (emphasis in the original).
Rakestraw was followed by the Commission in several cases. In Williams v. Giffen Industries, Inc., 4 FCR 32, cert. den., *743 Giffen Industries, Inc. v. Williams, 115 So.2d 197 (Fla.1959), the employer argued that the claim was not compensable because the parties had a “cooling-off” period between altercations. The commission cited Rakestraw for its discussion of the “positional-risk” doctrine and distinguished the case at issue from another case in which the deputy commissioner had found that the injured employee was not on duty at the time of the altercation, although he was on the premises, and that the cause of the fight was entirely unrelated to the employment.
In Smith v. Mid-State Steel & Wire Company, 4 FCR 205 (1960), a dispute arose between fellow employees who were also in a landlord-tenant relationship. The claimant’s co-worker was suspended from work for a week to give him a chance to cool off after threatening the claimant, but his threats continued after he returned to work, and he eventually “pistol-whipped” the claimant. The deputy commissioner adopted the positional-risk doctrine and also found that the claimant was the victim of an unprovoked assault by a fellow employee. The Commission held that regardless of the applicability of the positional-risk doctrine the claimant would be entitled to benefits, citing Giffen and Rakestraw.
In Talisman Sugar Corporation v. Bruce, 8 FCR 268, cert. den., 296 So.2d 49 (Fla.1974), the Commission affirmed a finding of compensability when the claimant, who was not the aggressor, was shot on his employer’s premises by a fellow worker. It noted that the appellants’ arguments “would require the Judge of Industrial Claims or this Commission retroactively to psychoanalyze the aggressor who shot the claimant” (i.e., if he was without a discernible motive or was preoccupied with on-the-job grievances, the claim would be compen-sable). The Commission declined the appellants’ invitation to reverse Rakestraw “for several reasons, not the least of which being that Rakestraw represents the settled law of this jurisdiction.” It rejected appellants’ argument that the injury did not “arise out of” the employment “precisely because the perpetrator of the crime and injury was motivated by concern for matters which were anterior to the employment,” citing Hill v. Gregg, Gibson & Gregg, Inc., 260 So.2d 193 (Fla.1972), in which the court defined “arising out of and in the course of the employment” as follows: “The injury must occur within the period of employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaging in doing something incidental to it.” The Commission distinguished Tucker Taxi, Inc. v. Schofield, 107 So.2d 188 (Fla. 1st DCA 1958), in which the Judge of Industrial Claims found the claimant to be the aggressor and denied benefits, citing section 440.09(3).
Commissioner Carson dissented in Talisman Sugar, characterizing Rakestraw as “bad law” and citing Larson’s treatise, sections 11:20 and 11:21 (1973):
When the animosity or dispute that culminates in an assault is imported into the employment from claimant’s domestic or private life, and is not exacerbated by the employment, the assault does not arise out of the employment under any test.
* # * * * *
When it is clear that the origin of the assault was purely private and personal, and that the employment contributed nothing to the episode, whether by engendering or exacerbating the quarrel or facilitating the assault, the assault should be held non-compensable even in states fully accepting the positional-risk test, since that test applies only when the risk is “neutral.”
Commissioner Carson stated:[1]
It is more than evident that the assault in question was the result of personal animosity, and that the employment in no way contributed to, or facilitated, the assault arising out of the personal hatred which the parties brought to their employment. The argument did not concern a subject matter connected with the employment: their work did not bring them together and create relations and *744 conditions which resulted in the clash; and claimant was not furthering the employer’s interest in any way at the time of the assault.
In San Marco Company, Inc. v. Langford, 391 So.2d 826, 327 (Fla. 1st DCA 1980), dismissed, Langford v. San Marco Company, Inc., 399 So.2d 1143 (Fla.1981), the deputy commissioner found that the claimant suffered a compensable accident when he was shot during working hours by a fellow employee (the claimant was not the aggressor). This court reversed, finding it clear “that the assault in this instance was the result of personal animosity” and that the fact that it occurred on the premises of the employer “was merely fortuitous.” Judge Booth dissented, citing Rakestraw and stating that the deputy commissioner’s finding that claimant did not provoke the assault and that he was entitled to worker’s compensation benefits was supported by competent substantial evidence.
This court again reversed the deputy commissioner’s finding of compensability in Ivy H. Smith Company v. Wingo, 404 So.2d 1118 (Fla. 1st DCA 1981). In that case, the claimant and two co-employees were in a car pool and got into a dispute over the money owed for transportation. The claimant did not pick up the co-employee who had not paid him, and later that morning the co-employee appeared on the job site and assaulted him with a weapon. Again quoting Larson, this court found “the apparent origin of the assault was a purely private and personal agreement relating to a car pool arrangement” that was not part of the employment, relying on George v. Woodville Lumber Company, 382 So.2d 802 (Fla. 1st DCA 1980), which involved an automobile accident and the “going and coming rule,” not an assault on the employment premises by a co-worker.
In Tampa Maid Sea Food Products v. Porter, 415 So.2d 883 (Fla. 1st DCA 1982), this court affirmed the finding that the claimant suffered a compensable accident when she was injured during working hours on the employer’s premises by a fellow employee. Both employees were romantically involved with a third employee, but the claimant and her assailant had no other personal relationship outside their work. The court agreed that the claimant was not the aggressor, but found this was not the deciding factor, “for there remains the question of whether the stabbing arose out of the employment,” citing Langford for the determinative legal principles. Id. at 884. The court noted that in Langford the Larson rule worked to deny the claimant compensation,[2] but found that in the case at issue, the deputy commissioner correctly determined that there were several circumstances which removed it from the Larson rule:
The dispute culminating in the assault was exacerbated by the employment because of the close proximity between the claimant and her assailant; the relationship between them and Mr. Fields originated at work; and the knife used in the assault was used at work, thus “facilitating the assault.” It was not merely fortuitous that the assault occurred on the premises of the employer. Finally, there is no question that the claimant was not the aggressor.
Id. at 885. The court explained its affirmance of the deputy commissioner’s finding that the injury arose out of and in the course and scope of the claimant’s employment: [3]
Thus, by facilitating an assault which would not have otherwise been made, the *745 employment became a contributing factor. Campbell became incensed over the gossip which, in all respects, is a beast native to the work place. In short, the “tormentor was an established fixture of the employment environment.”
Id. The court cited Hartford Accident and Indemnity Company v. Cardillo, 112 F.2d 11 (D.C.Cir.), cert. den., 310 U.S. 649, 60 S.Ct. 1100, 84 L.Ed. 1415 (1940), in which Justice Rutgers observed:
[W]ork places men under strain and fatigue from human and mechanical impacts creating frictions which explode in myriads of ways, only some of which are immediately relevant to their tasks. Personal animosities are created by working together_, Others initiated outside the job are magnified to the breaking point by its compelled contacts.
In Carnegie v. Pan American Linen, 476 So.2d 311 (Fla. 1st DCA 1985), this court reversed the deputy commissioner’s order denying a claim for benefits for an injury sustained in an altercation at work, finding that the deputy erred in denying the claim solely upon a determination that the origin of the dispute was personal in nature without resolving the conflicts in the evidence, including the question of which worker was the aggressor. In that case, the parties (who had been romantically involved) were involved in a confrontation at work and the assailant armed herself with one of several knives available on the employment premises. The court relied on Porter, Wingo, and Langford for the proposition that “where the work place is merely the fortuitous site of a personal assault which is purely private in origin, and the employment does not otherwise impact the altercation, compensation benefits are properly denied even if the claimant is not the aggressor, since the resulting injuries would not arise out of the employment.” Id. at 312. However, the court noted that Porter “further establishes that compensation may be appropriate for injuries which result from a personal altercation if the employment is in some way a contributing factor.” Id.
In Carnegie, the deputy commissioner had concluded that the altercation was “purely personal” and that the employment neither exacerbated nor contributed to it, and had distinguished Porter as a situation involving an altercation precipitated by “gossip in the plant.” This court found that while such gossip was a significant factor in the Porter decision, “the court there focused on other matters as well, including the circumstance that the employment placed the workers in close proximity, that the personal relationships originated at work, and that a knife used in the assault was an implement of the employment.” Id. The court noted that the case at issue involved similar circumstances, cited Judge Rutgers’ opinion in Cardillo, and found:
In the present case the work place was not merely the fortuitous location of an otherwise inevitable personal assault. Rather, the work environment directly impacted the altercation and the employment was thus a contributing factor which facilitated the assault. The deputy therefore erred in denying the claim solely upon a determination that the origin of the dispute was personal in nature, without resolving the various material conflicts in the evidence including the question as to which worker was the aggressor in the altercation.

Id.

In light of the case law developing this particular question, and the absence of any statutory language to the contrary, we are constrained to find that in the case at issue the deputy commissioner erred in finding that the work place was merely the fortuitous location of an otherwise inevitable personal assault. The evidence presented demonstrates that the employment placed the workers in close proximity, that their personal relationship originated at work, and that the piece of lumber used in the first assault was an “implement of the employment.” The work environment thus directly impacted the altercation and the employment was therefore a contributing factor which facilitated the assault. Carnegie.
*746 REVERSED and REMANDED for further proceedings consistent with this opinion.
SHIVERS, C.J., and SMITH, J., concur.

. 8 FCR at 271.

. The court noted in a footnote that the fact that the assault occurred at the work site was strictly fortuitous, and "[c]hances were that the assailant would not have ceased searching for the claimant beyond the work place, i.e., the assault was inevitable, without regard to the employment." Id. at 885.

. See also Brown v. Winn-Dixie Montgomery, Inc., 427 So.2d 1065 (Fla. 1st DCA 1983), vacated on other grounds, 469 So.2d 155 (Fla.1985), a tort case in which this court found that the plaintiff did not have a workers’ compensation remedy against her employer for an intentional battery, citing Porter and noting that "[a] number of recent cases of this Court have found assaults by co-employees to be compensable when the employment contributes to the risk or to the completion of the assault."