Benedicto PEREZ, Appellant
(Plaintiff below),

v.

UNITED STATES STEEL CORPORATION, Appellee (Defendant below).

No. 981S264.

Supreme Court of Indiana.

Dec. 1, 1981.

J. B. Smith, Andrew J. Fetsch, Beckman, Kelly & Smith, Hammond, for appellant.

Douglas F. Stevenson, Robert K. Bush, Rooks, Pitts, Fullager & Poust, Chicago, Ill., for appellee.

HUNTER, Justice.

This cause was brought before this Court on the petition to transfer of Benedicto Perez, wherein he sought review of the Court of Appeals' opinion found at *Perez v. United States Steel Corporation,* (1981) Ind. App., 416 N.E.2d 864. We have previously granted transfer, vacated the opinion of the Court of Appeals, and remanded the cause to the Full Industrial Board of Indiana with directions for the Board to enter the specific findings of basic fact upon which its decision was based. *Perez v. United States Steel Corporation,* (1981) Ind., 426 N.E.2d 29 (Pivarnik, J., dissenting).

Perez sustained a work-related injury while employed at United States Steel Corporation in 1970. His claim for Workmen's Compensation culminated in the Industrial Board's decision that Perez suffered a twenty percent permanent partial impairment, but was not permanently totally disabled. The focus of Perez's appellate efforts has been his challenge to the Board's conclusion he is not permanently totally disabled. His corollary contention throughout the appellate process has been his challenges to the sufficiency of the findings of fact made by the Board.

■ On remand, the Board has submitted findings of fact of sufficient specificity and clarity to fully satisfy the penultimate purpose of the fact-finding requirement. The findings "reveal the Board's analysis of the evidence and its determination therefrom regarding the various specific issues of fact which bear on the particular claim." *Id.* at 33. The findings read in relevant part:

"Said Full Board having reviewed all of the evidence in said cause, and being duly advised in the premises therein, now finds:

"1. That on the 17th day of August, 1970, Plaintiff was in the employ of the Defendant herein at an average weekly wage in excess of Ninety-Five Dollars ($95.00); that on said date Plaintiff sustained an accidental injury arising out of and in the course of his employment by Defendant herein, of which said accidental injury Defendant had knowledge and did furnish the statutory medical attention and supplies; that Plaintiff's injury consisted of a herniated disc of the lumbar spine at L4, L5, caused by Plaintiff's tripping on the edge of a platform raised approximately four (4) inches above floor level and falling upon steel girders;

"2.  That following said accidental injury Plaintiff was sent to the plant dispensary and he returned to work the next day and was assigned light duty; however, on August 19, 1970, Plaintiff was unable to ambulate.  Thereupon he underwent extensive therapy but his condition did not improve;

"3.  That in January, 1971, Plaintiff was hospitalized under the care of Dr. R. S. Martino for a period of three (3) weeks when Dr. Martino performed a lumbar laminectomy, and upon release from the hospital Plaintiff underwent further therapy; that Plaintiff was again hospitalized for a period of three (3) weeks in the month of June, 1971, when Dr. Martino performed a second laminectomy, and upon release from the hospital Plaintiff underwent still further therapy; that Dr. Martino released Plaintiff from his care and advised against any additional surgery; thereupon Plaintiff consulted Dr. Howard W. Pierson of the Ross Clinic at Merrillville, Indiana, the Mayo Clinic at Rochester, Minnesota, Dr. William Mott, Dr. Plinio Ramero, Dr. Alan Kaufman and Dr. Ramon Blanco, all of which said medical attention was unauthorized by Defendant herein;

"4.  That following Plaintiff's second surgery he continued treatment with Dr. Martino.  On August 31, 1971, a physical examination of Plaintiff revealed no neurological abnormalities.  An EMG performed showed improved results when compared with a similar test performed on September 23, 1970, which itself was not overly significant;

"5.  That Dr. Martino last treated Plaintiff on September 30, 1971.  His examination at the time was within normal limits with no objective neurological abnormalities.  Dr. Martino consulted with a Dr. Saavedra who had also examined Plaintiff and Dr. Saavedra concurred with this opinion;

"6.  That Dr. Martino re-examined Plaintiff on August 16, 1978.  The doctor's physical findings were as follows:

   " 'The patient appears to be in good health, robust, but he claims that any attempt at moving about caused him pain, and yet, he was walking with a cane.  He had difficulty getting into the chair, and yet, when I asked him to lie down on the examining table, he hopped up without—you know—without any difficulty or apparent discomfort.

   " 'I examined the spine.  I found no evidence of any paravertebral muscle spasm; yet, he complained of severe pain when I touched him.

   " 'The leg lengths when measured from the anterior-superior iliac spine to the medial malleolus measured 32 and three-quarters inch bilaterally.

   " 'Circumference of the legs twelve inches below the anterior-superior iliac spine—that would be in the thighs—on the right was 18 inches; on the left it was 17 and a half.

   " 'The circumference of the calf 24 inches below the anterior-superior iliac spine bilaterally equal at 15 inches.

   " 'The patient had no calluses on his hands; complained of pain in the back with both—with his knees and hips flexed.

   " 'There is a point where there is no stress to the sciatic nerve and this should elicit no discomfort.

   " 'The patient had no sensory changes and no weakness.  When the patient was distracted with talking, the straight-leg test was negative on the right, and there is some resistance at 90 degrees which is the normal limits on the left.

   " 'An EMG was performed then on August 22, 1978, and it showed some mild denervation of the S–1 nerve root.'

"7.  That Dr. Martino assessed Plaintiff's physical impairment at twenty percent (20%) of the person as a whole;

"8.  That it was Dr. Martino's opinions that, as of August 16, 1978, the Plaintiff's physical condition did not prevent him from performing some reasonable type of employment;

"9. That Plaintiff was examined only once by Dr. Ramon Blanco, Plaintiff's own medical expert, on November 30, 1972. Dr. Blanco assessed Plaintiff's physical impairment at fifteen percent (15%) to twenty percent (20%) of the person as a whole. Dr. Blanco also stated that, although Plaintiff could not perform heavy work as a millwright, he was definitely capable of performing less strenuous jobs;

"10. That Dr. T. Forrest Fisher, the employer's plant surgeon and medical director, found Plaintiff suffered a twenty percent (20%) physical impairment to the person as a whole;

"11. That both Dr. Blanco and Dr. Martino, Plaintiff's medical experts and the employer's medical expert (and treating physician) respectively, testified in full and were subject to cross-examination in the course of these hearings;

\*   \*   \*   \*   \*   \*

"13. That Plaintiff's ability to perform work as a millwright for a large steel company demonstrates his mental and intellectual capability to understand and comply with the rudimentary elements of many low to moderately skilled employments;

"14. That Plaintiff's permanent condition as described in Paragraphs 4, 5, 6, 7, 8, 9 and 10 above does not prevent Plaintiff from performing reasonable types of low to moderately skilled employment. This is specifically supported by the consistent lack of objective neurological findings in examinations by Plaintiff's own treating physicians;

"15. The Industrial Board hereby adopts the findings of Dr. Blanco, Plaintiff's medical expert on the question of Plaintiff's ability to work and degree of impairment, pointing out that Dr. Blanco's opinion is virtually identical to that of Dr. Martino, Defendant's medical expert;

\*   \*   \*   \*   \*   \*

"19. It is further found that the non-medical evidence presented by Perez at the first hearing on his claim is that Perez has a seventh grade education and possesses no exceptional skills. That U.S. Steel terminated his employment subsequent to the accident without violation of law. That subsequently Perez availed himself of his rights under disability benefits provided for by his employer which are not related to his rights under the Compensation Act;

"20. That Perez's self-serving statements of total disability not supported by reliable medical evidence was disbelieved by the single hearing member as mere speculation, surmise and conjecture to support his unsupported claims of total disability. That the Full Board adopts this *conclusion of fact and further concludes* from a review of the entire record that the claimant is eighty percent (80%) whole and able to work if he so chooses.

\*   \*   \*

"21. It is further found that the claimant having been determined to be twenty percent (20%) permanently partially impaired and eighty percent (80%) whole does not establish with certitude that he is unable to resume reasonable types of employment '*for the remainder of his life.*'" [Emphasis original.]

On these basic findings of fact rests the Board's ultimate finding of fact and conclusion of law that Perez has not suffered "permanent total disability," as that term is employed in Ind.Code § 22–3–3–10(b)(3) (Burns 1974). The findings made by the Board, as a quasi-judicial body, are "conclusive and binding as to all questions of the fact." Ind.Code § 22–3–4–8 (Burns 1974).

As we hold these findings of fact to satisfy the purposes of the statutory requirement enunciated in Ind.Code § 22–3–4–7 (Burns 1974), we turn to the focal point of Perez's appeal: whether the evidence supports the Board's findings and conclusion that Perez is not permanently totally disabled.

As explained by the Court of Appeals in its original disposition of Perez's appeal, to establish a "permanent total disability," the injured workman is required to prove he or she "cannot carry on reasonable

types of employment." *Perez v. United States Steel Corporation*, (1977) 172 Ind. App. 242, 245–6, 359 N.E.2d 925, 927–8, quoting Small, Workmen's Compensation Law of Indiana § 9.4 p. 244 (1950). As Judge Garrard explained:

> "[T]he principle of § 10 is to provide a fixed amount of recovery for a permanent loss. In this context a provision for permanent disability, i. e., inability to work for the remainder of one's life, naturally carries the connotation of the inability to reasonably earn a livelihood." *Id.*

Consequently, the "reasonableness" of the workman's opportunities are to be assessed "by his physical and mental fitness for them and by their availability." *Id.*

█ Perez, as claimant, bore the burden of proving the existence of this condition in order to justify recovery for a "permanent total disability." He therefore appeals from a negative judgment; in our review of that judgment, we will not weigh the evidence nor judge the credibility of witnesses. Rather, we examine the record only to determine whether there is any substantial evidence and reasonable inferences which can be drawn therefrom to support the Board's findings and conclusion. Only if the evidence is of a character that reasonable men would be compelled to reach a conclusion contrary to the decision of the Board will it be overturned. *Heflin v. Red Front Cash & Carry Stores*, (1947) 225 Ind. 517, 75 N.E.2d 662; *Penn-Dixie Steel Corp. v. Savage*, (1979) Ind.App., 390 N.E.2d 203; *Robinson v. Twigg Industries, Inc.*, (1972) 154 Ind.App. 339, 289 N.E.2d 733.

█ Here, the evidence is sufficient to support the Board's findings of basic fact and its finding of ultimate fact and conclusion of law. Dr. R. S. Martino, who initially treated defendant and whose involvement with Perez's treatment was extensive, testified his medical examination yielded no evidence to support Perez's claim. Martino attributed Perez's claimed pains in part to psychological factors, and generally cast doubt on Perez's credibility by relating incidents where he had observed Perez move effortlessly when—consistent with the pain complained of—the movement should have caused distress. The Board, as its findings of basic fact reveal, relied heavily on Martino's testimony, characterizing Perez's declarations "self-serving" insofar as his claim was concerned.

It was Martino's opinion that surgery conducted on Perez's back, wherein scar tissue was removed from an intervertebral disc, served to alleviate the pain which had plagued Perez. During a subsequent examination, he found no orthopedic or neurological abnormalities. He assessed Perez's disability as one of twenty percent permanent partial impairment of the man as a whole; he concluded that Perez was capable of carrying on reasonable types of employment.

█ As Perez argues, the conclusions reached by Dr. Martino were contradicted by other medical experts. Just as the matter of Perez's credibility was the province of the Industrial Board, however, so also was it the Board's prerogative to resolve the conflicts in the expert testimony. We cannot impinge on the Industrial Board's resolution of these questions. *Berryman v. Fettig Canning Corp.*, (1980) Ind.App., 399 N.E.2d 840. While the fact that Perez has only a seventh grade education might militate against his eligibility for particular types of employment, he offered no evidence regarding the availability (or lack thereof) of "reasonable types of employment." Perez rested his claim on the medical question of his physical capacity to carry on reasonable types of employment; pursuant to the standard of review incumbent upon us, the Board's findings and conclusion in that regard must be upheld. In turn, due to the lack of evidence on other questions relevant to his claim, the medical question is dispositive. Perez's contention that the evidence warrants a result contrary to that reached by the Board and that, as a matter of law, he suffered total permanent disability, must fail.

For all the foregoing reasons, the Industrial Board did not err in its disposition of

Perez's claim and the Board is in all things affirmed.

Award affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.