WANATAH TRUCKING, Defendant-Appellant

v.

Jerome BAERT (now deceased); Elsie Baert; Janice Baert; Jerome Baert, Jr. and Jamie Baert, Plaintiffs-Appellees.

No. 2–882A269.

Court of Appeals of Indiana, Third District.

April 27, 1983.

Rehearing Denied July 8, 1983.

Robert M. Edwards, Jr., Jones, Obenchain, Johnson, Ford, Pankow & Lewis, South Bend, for defendant-appellant.

Thomas W. Ward, Knox, for plaintiffs-appellees.

GARRARD, Judge.

Wanatah Trucking (Wanatah) here seeks judicial review of the decision of the full Industrial Board to award 500 weeks of compensation to the dependents of Jerome Baert for his permanent total disability.

Jerome Baert (Baert) was employed by Wanatah and was injured in an accident occurring within the course of his employment on June 11, 1976. Wanatah furnished Baert with necessary medical and hospital

services and made temporary total disability payments pursuant to a Form 12 agreement as to compensation from June 11, 1976 to March 19, 1980, the date on which Baert was hospitalized for treatment of cancer. Because Baert had been hospitalized for reasons not related to the employment accident, Wanatah terminated his benefits. Baert died of cancer on June 4, 1980.

On February 24, 1981 a Form 14 application for review of award on account of a change of conditions was filed with the Industrial Board of Indiana (Board) on Baert's behalf. A hearing was held before a single member of the Board,[1] IC 22–3–4–6, to determine the extent of Baert's permanent partial impairment or whether he was permanently and totally disabled. The single Board member entered findings of fact and conclusions of law and awarded Baert 500 weeks compensation[2] for permanent total disability. Wanatah then petitioned for review of the award by the full Board, IC 22–3–4–7, which adopted the single member's findings, conclusions and award as its own. Pursuant to IC 22–3–4–8 Wanatah now seeks judicial review of the full Board's decision.

Wanatah raises three issues:

1. Are the findings of fact entered by the single member and adopted by the full Board supported by evidence in the record?

2. Are the findings of fact sufficiently specific to reveal the basis of the Board's decision and to permit intelligent review?

3. Did the Board err as a matter of law in ruling that Baert's widow and minor dependents were entitled to receive the permanent total disability payments which had not yet accrued on the date of his death?

## I.

Wanatah contends that the Board's findings that Baert's condition had reached a permanent and quiescent state[3] on or before May 3, 1979; that Baert had a problem related to a ventral hernia which resolved itself; and that Baert was physically unable to perform any task due to pain in his leg are all unsupported by evidence in the record.

■ At the outset we note that it is not our prerogative to weigh the evidence or to judge the credibility of witnesses. We will examine the record only to determine whether there is any substantial evidence or inferences therefrom to support the Board's findings and conclusions. *Perez v. United States Steel Corp.* (1981), Ind., 428 N.E.2d 212 (*Perez II*). Further, we cannot reverse the findings of the Board unless it conclusively appears that the evidence upon which the Board acted was devoid of probative value or was so proportionately inadequate that the findings could not rest on a rational basis. *Noblesville Casting Div. of TRW v. Prince* (1982), Ind., 438 N.E.2d 722. Only if the evidence is so inadequate that a reasonable man would be compelled to reach a contrary result will the decision of the Board be overturned. *Perez, supra,* 428 N.E.2d at 216.

■ Despite its statements to the contrary, each of Wanatah's arguments regarding the existence of evidence to support the Board's findings asks us to reweigh the evidence, especially the testimony of Baert's two physicians. Whatever inconsistencies there may have been in an individual witness' testimony or whatever conflicts there may have been between two witnesses was

1. At this hearing the parties stipulated that two issues were presented to the Board: (1) did Baert suffer any permanent partial impairment as a result of his accident, and (2) was Baert permanently and totally disabled. Further, Baert's widow and dependent children were substituted as parties plaintiff.

2. Wanatah was credited with the 197 weeks and 2 days worth of benefits it had paid to

Baert pursuant to their compensation agreement.

3. Prior to an award for permanent disability or permanent impairment the employee's condition must have reached a permanent and quiescent state. This requirement permits an injury to be assessed for compensation purposes. *See White v. Woolery Stone Co.* (1979), Ind.App., 396 N.E.2d 137.

for the Board to resolve.[4] The Board's finding that Baert's condition had reached a permanent and quiescent state by May 3, 1979 is supported by expert testimony to the effect that damage to the veins of the leg, such as that suffered by Baert, is permanent and irreversible and that his condition persisted unchanged and unrelenting from the date of injury.

Wanatah argues that the finding regarding the hernia is not supported by the evidence because that condition required surgery which, even though the hernia was observed prior to May 3, 1979, was not performed until the following November. By this observation Wanatah appears to argue once more that Baert's condition had not reached a permanent and quiescent state. We do not agree with this reasoning. Although Baert's hernia is traceable to the work accident, it is clear that the principal cause of his disability was the pain in his leg caused by the extensive deep thrombophlebitis and post-traumatic dystrophy. The hernia was merely a temporary by-product of the leg injury. Finally, there was ample testimony that the pain Baert suffered rendered him physically incapable of working.[5] Baert's primary physician testified that the pain would prevent Baert from standing for any length of time and would be a constant source of irritation even if he were to attempt a sedentary job. Baert's widow also testified that her husband could do little except sit around, that he had to be helped out of his chair and that he fell frequently and had to be picked up from the floor.

The findings are amply supported by evidence in the record.

## II.

IC 22–3–4–7 provides that upon review of an award made by fewer than all members, the full Board shall review the evidence,[6] make and file an award, and file the findings of fact upon which the award is based. Our Supreme Court has had several occasions in the recent past to elaborate on the completeness and specificity required when the Board makes findings of fact. See Noblesville Casting Div. of TRW v. Prince (1982), Ind., 438 N.E.2d 722; Rork v. Szabo Foods (1982), Ind., 436 N.E.2d 64; Talas v. Correct Piping Co. (1982), Ind., 435 N.E.2d 22 (Talas III); Talas v. Correct Piping Co. (1981), Ind., 426 N.E.2d 26 (Talas II); Talas v. Correct Piping Co. (1981), Ind., 416 N.E.2d 845 (Talas I); Perez v. United States Steel Corp. (1981), Ind., 428 N.E.2d 212 (Perez II); Perez v. United States Steel Corp. (1981), Ind., 426 N.E.2d 29 (Perez I).

The lesson to be gleaned from these cases is that IC 22–3–4–7 requires the Board to do more than state its ultimate conclusion. Rather the central purpose of the statutory fact finding requirement is to reveal the factual basis for the Board's decision and its resolution of sub issues and factual disputes which bear upon the employee's claim. Noblesville Casting, supra, 438 N.E.2d at 735. This requirement serves several useful purposes. It insures that the parties are apprised of the reason for the Board's decision, see Perez I, supra, 426 N.E.2d at 32. Specific and complete findings also allow a reviewing court to fully utilize the Board's expertise, see Rork, supra, 436 N.E.2d at 69. They facilitate an informed, intelligent, and speedy review, which ultimately lessens the case burden of both the Board and the courts, see Rork, supra, 436 N.E.2d at 69,[7] and preserve the

---

4. Some of the conflicts which Wanatah presents in its brief are more imagined than real when the witnesses' testimony is read in full and in context.

5. We note here that while the Board's findings speak in terms of Baert being unable to perform "any task," he need not have shown such incapacity to recover benefits for permanent total disability. To establish a permanent total disability the employee must establish that he

cannot carry on reasonable types of employment, with reasonableness to be assessed by looking at his physical and mental fitness and the availability of job opportunities. See Perez v. United States Steel Corp. (1981), Ind., 426 N.E.2d 29, 31 (Perez I).

6. The Board may also choose to hear the parties. IC 22–3–4–7.

7. The Rork court cautioned the full Board about adopting, without independent scrutiny,

integrity of the Board's decisions by insuring that our review is limited to the findings, see *Talas I,* 416 N.E.2d at 846. Findings also serve as a prophylactic measure against arbitrary or hastily drawn conclusions, see *Rork,* 436 N.E.2d at 67. Finally, as a quasi-judicial body the Board's findings are conclusive and binding as to all questions of fact, IC 22–3–4–8, see *Perez I, supra,* 426 N.E.2d at 33.

■ Although not as complete as the findings ultimately entered after remand in, for example, *Perez II,* and not as complete as we would encourage the Board to make in the future,[8] we conclude that the findings of fact in the present case are sufficiently complete to exceed the minimal level of acceptance. The ultimate question before the Board was whether Baert qualified for permanent total disability benefits. The Board's findings indicate that its decision to award Baert these benefits was based on its conclusion that he was precluded from doing any employment task by the pain in his leg. The Board found that Baert's pain was caused by a condition of veinous obstruction and sympathetic reflect dystrophy, which condition resulted from the work accident.[9] These findings are sufficient to reveal the basis of the award and to permit judicial review.

### III.

Wanatah's last contention is that the full Board erred as a matter of law in ruling that permanent total disability benefits survive the death of the employee from an unrelated cause and in ordering it to pay the unaccrued benefits to Baert's widow and minor dependents. Payment of compensation when an employee dies of a cause unrelated to the work injury is governed by IC 22–3–3–16, which provides:

"When an employee has been awarded or is entitled to an award of compensation for a definite period under this act for an injury occurring prior to April 1, 1945 and dies from any other cause than such injury, payment of the unpaid balance of such compensation, not exceeding three hundred (300) weeks, shall be made to his dependents as defined in section 38 hereof; provided that where the compensable injury occurred on and after April 1, 1945, and prior to April 1, 1951, the maximum shall not exceed three hundred and fifty (350) weeks. With respect to any such injury occurring on and after April 1, 1951, the maximum shall not exceed three hundred and fifty (350) weeks for dependents of the second or third class and the maximum shall not exceed five hundred (500) for dependents of the first class."

Our Court of Appeals has on at least three occasions interpreted substantively identical predecessor versions of this statute.[10] In *Wenning v. Turk* (1921), 78 Ind. App. 355, 135 N.E. 665, the court held that the clause providing for payment of the "unpaid balance" of compensation to the employee's dependents referred to unaccrued payments and could not be restricted to mean only payments actually due the employee at the date of his death. 135 N.E. at 667. In *Weber Milk Co. v. Dunn* (1940), 108 Ind.App. 463, 29 N.E.2d 797 the court concluded that even when a Form 14 petition for review of compensation award is merely pending at the time of the employee's death from an unrelated cause, his widow is entitled to be substituted as a party plaintiff and to collect any award to which he would have been entitled. 29 N.E.2d at 798. More recently the court in *Snyder Constr. Co. v. Thompson* (1969), 145 Ind.

---

the findings of a single member. 436 N.E.2d at 67–68.

8. We would encourage the Board to include a greater recitation of the evidence that exemplifies Baert's pain and incapacity.

9. The parties stipulated to several important elements of an employee's claim for permanent partial impairment, including the existence of

the employment relationship and the causal relationship between Baert's injury and his employment duties.

10. The substantive similarity of this statute through all its amendments was noted in *Snyder Constr. Co. v. Thompson* (1969), 145 Ind. App. 103, 248 N.E.2d 560, 561.

App. 103, 248 N.E.2d 560, held that a dependent of an employee who had died from causes unrelated to the work accident could maintain an action for benefits when no claim was pending nor an award being disbursed at the time of death. 248 N.E.2d at 564.

■ Wanatah acknowledges these cases but attempts to distinguish them by virtue of the fact that each dealt with an employee seeking benefits for permanent partial impairment, not permanent total disability. Wanatah states that no case in this state has ever applied the rules of *Wenning, Weber Milk,* and *Snyder Constr.* to a claim for permanent total disability and that we should not do so in the present case. We are not persuaded by Wanatah's arguments and conclude that IC 22–3–3–16 cannot be read to distinguish between permanent partial impairment and permanent total disability. We believe our decision is consistent with the philosophy that underlies a compensation award for these types of injuries.

Two competing theories of compensation can be said to characterize workmen's compensation law. One, which Professor Larson has labeled the "earning impairment theory," seeks to compensate the employee for wages lost because of the work related accident. The other theory, the "physical impairment theory," seeks to compensate the worker for his physical injuries. *See* 2 *Larson, Workmen's Compensation Law* (1982), Section 57.14(a) *et seq.* Wanatah's contention that Baert's widow and dependents should not receive the unaccrued portion of Baert's award because he died from a cause not related to his work injury, with the result that the injury is no longer responsible for a reduction in earnings, is founded on the earnimg impairment theory. We believe, however, that for permanent injuries the physical impairment theory is the better reasoned.

Like the specific scheduled losses of IC 22–3–3–10, the amount of compensation for permanent and total disability is conclusively presumed by statute, *see* IC 22–3–3–8. We view such an award, even if payable in installments, to be vested in the employee as of the date it is determined he is entitled to benefits. In essence, for permanent injuries the employee's loss of physical function and his entitlement to the full amount of benefits fixed by statute should both be complete as of the date the Board rules he is entitled to compensation.

Support for our decision can be found in the Illinois Supreme Court case of *Mt. Olive & Staunton Coal Co. v. Industrial Comm.* (1946), 394 Ill. 377, 68 N.E.2d 771. In *Mt. Olive* the employee suffered permanent total disability in an accident at work and was awarded benefits. The employee later died from causes unrelated to the work accident, and his widow brought an action to compel the employer to pay the balance of the award to her.[11] The Illinois Supreme Court affirmed the judgment of a circuit court which had held that the unpaid balance of such benefits became vested in the widow upon her husband's death and should be paid to her.

The Board committed no error of law in awarding the unaccrued balance of Baert's award for permanent total disability to his widow and dependents.

Pursuant to IC 22–3–4–8 the amount of the award is increased by 5%.

The judgment of the full Industrial Board, as modified, is affirmed.

HOFFMAN, P.J., and STATON, J., concur.

11. The employee in *Mt. Olive* had lost the use of both eyes in an employment accident. Under the relevant Illinois statutes this injury constituted a specific (scheduled) loss but, for the purpose of determining the amount of compensation to be awarded, was considered a total and permanent disability.