### Juris KANCS, Appellant
### (Defendant Below),

v.

### Wade WALKER, Appellee
### (Plaintiff Below).

### No. 93A02–9001–EX–77.

Court of Appeals of Indiana,
Third District.

July 23, 1990.

Michael V. Gooch, Harrison & Moberly, Indianapolis, for appellant.

J. Frank Hanley II, Indianapolis, for appellee.

HOFFMAN, Presiding Judge.

Appellant Juris Kancs appeals a worker's compensation award in favor of Wade Walker. The facts indicate that Walker fell from a roof while in the course of doing construction work for his employer, Juris Kancs. The parties agreed that Kancs pay Walker's medical bills and temporary total benefits for 135 weeks. On June 5, 1989, the parties stipulated that the Worker's Compensation Board should determine if Walker was entitled to total permanent disability benefits.

A hearing judge for the Worker's Compensation Board awarded temporary total disability benefits to Walker. On review, the Full Worker's Compensation Board awarded Walker disability benefits for 500 weeks.

Kancs raises two issues:

(1) whether the parties and Worker's Compensation Board were bound by the stipulation that the only issue was permanent total disability; and

(2) whether the evidence was sufficient to support the worker's compensation award.

Kancs argues that the parties and Worker's Compensation Board were bound by the stipulation that the only issue was permanent total disability. Prior to the hearing before the Worker's Compensation Board hearing judge, the parties stipulated that the sole issue to be resolved was whether Walker was entitled to total per-

manent disability benefits. In spite of the stipulation, the hearing judge awarded Walker temporary total disability benefits. The Full Worker's Compensation Board awarded Walker disability for 500 weeks. The Full Board failed to specify under which disability category the award belonged. 500 weeks is an award for permanent total disability and no words of limitation indicating a temporary award were included in the Full Board's order.[1] The award by the Full Board was for permanent total disability and consistent with the pre-hearing stipulation. *See* IND. CODE § 22-3-3-10 (1989 Supp.).

Kancs contends the evidence was insufficient to support the worker's compensation award. The standard of review for worker's compensation awards was stated in *Dane Trucking Co. v. Elkins* (1988), Ind.App., 529 N.E.2d 117, 120-121:

"A reviewing court is reluctant to reverse awards of worker's compensation granted by the Industrial Board. It is the province of the Board to hear and weigh the evidence, determine the evidentiary facts and from such facts draw reasonable inferences to arrive at the ultimate fact. The finding of the ultimate fact becomes a question of law for the determination of the reviewing court only where there is no conflict in the evidence and where there can be only one reasonable inference drawn from the evidentiary facts established by the uncontradicted evidence. *Joseph E. Seagram & Sons, Inc. v. Willis* (1980), Ind.App., 401 N.E.2d 87, 91.

The reviewing court cannot reverse the findings of the Industrial Board unless it conclusively appears that the evidence upon which the Board acted was devoid of probative value or was so proportionately inadequate that the finding could not rest on a rational basis. Only if the evidence is so inadequate that a reasonable man would be compelled to reach a contrary result will the decision of the Board be overturned. *Wanatah Truck-*

*ing v. Baert* (1983), Ind.App., 448 N.E.2d 48, 50."

The Worker's Compensation Act is liberally construed in favor of the employee. *R.L. Jeffries Trucking Co., Inc. v. Cain* (1989), Ind.App., 545 N.E.2d 582, 588.

Permanent total disability has been defined as follows:

"A total disability to be permanent must be one which so destroys or shatters a workman's wage earning capacities as to leave him unable to resume reasonable types of employment for the remainder of his life. Since this form of disability is treated in the same section with other harms comprising threats to wage-earning power such as impairments and lost uses, total permanent disability must be taken to require a greater incapacity than that produced by any other of the scheduled harms. However, it is not necessary to a showing of total permanent disability that the workman prove an utter inability to do anything with the remains of his body. The believe-it-or-nots demonstrate that even the most hopeless human wrecks have on occasion developed obscure means for obtaining livelihood. It is sufficient if the workman can show that he has been so incapacitated by his injuries that he cannot carry on reasonable types of employments. The reasonableness of the workman's opportunities will be measured by his physical and mental fitness for them and by their availability."

*Perez v. U.S. Steel Corp.* (1977), 172 Ind.App. 242, 245-246, 359 N.E.2d 925, 927-928, *quoting* B. Small, *Workmen's Compensation Law of Indiana* § 9.4, pp. 244-245 (1951 Ed.).

In the present case, a deposition and medical reports made by Dr. Robert Cravens, Walker's treating orthopedic surgeon, were admitted into evidence. The following report concluding that Walker was not a candidate for vocational services was written by Marcia Inselberg, a certified rehabilitation counselor:

---

1. The hearing judge's order specified that the award was for temporary total disability and included words of limitation stating: "[The award is] to continue until terminated in accordance with the provisions of Worker's Compensation Law of Indiana."

*"Vocational Summary—Wade A. Walker*

Wade A. Walker is a 30 year old male who, during the course of his employment in December 1984, fell from a roof landing on his feet on concrete. He was immediately hospitalized for the injuries suffered in this fall. Subsequently, he has been operated on numerous times and has been followed by Dr. Robert E. Cravens.

Medical records indicate that Mr. Walker currently suffers from multiple problems as a direct result of this accident. His right foot has been fused in the heel and his 'foot (is) incapable of rocking back and forth to sustain that type of motion that is ordinarily taken up by the heel in ordinary weight bearing. This makes it a little bit more difficult to walk on uneven ground because you can't compensate for the unevenness of the foot.' (Cravens 1/9/89) Further, his left ankle is fused completely; thus, making walking on a sustained basis very difficult. Dr. Cravens quotes in his report that he is concerned about (P. 11) Wade's use of energy in walking 'would have to be more than normal because of the limited motion of the ankle on the left side.' He is also unable to take a normal stride length. In addition, with these documented contra-indications to walking and/or standing for periods of time, Mr. Walker also suffers from a slipped disc and related back problems, all since the fall from the roof. Dr. Cravens performed a laminectomy and disectomy (May 1988) and follow-up anti-inflammatory medication to try to reduce the pains Mr. Walker suffers in his back, legs, and hips. Further, Dr. Cravens discusses the predicted onset of arthritis.

It is important to note for vocational purposes that, at this stage, we are dealing with a young male who was in good physical condition prior to the accident. As his work life should have been at least another 35 years, we are dealing with a judgment about his ability to work now and for a very long 'vocational life.' Because of his young age and obvious need to be productive, Wade has enrolled, under the support and direction of the Bureau of Vocational Rehabilitation, in an Architectural Draftsman class at Ivy Tech. He hopes to complete an Associate Degree and perhaps someday work on a very limited part-time basis. He could possibly, given his physical condition, do contract work on an irregular basis.

Currently, the course of study is uneventful academically; however, he is unable to sustain himself throughout the day. He often goes to class late and leaves early because he cannot sit more than 2–3 hours even with periodic breaks. Even in the comfort of his own home and on his own schedule, he is unable to do his homework for more than 4–5 hours, even with laying down periodically to relieve the pain. Consequently, I would have to conclude that Mr. Walker is not ready for employment on a sustained basis and, given the nature of his injuries, most probably never will be.

In conclusion, Mr. Walker *cannot work at this time,* nor is he expected to be able to do so in the future, because:

1. he is unable to walk and or stand without assistance of a cane and cannot do so for prolonged periods of time because of swelling, his legs 'give out,' lack of energy, etc.,

2. he is unable to sit for prolonged periods of time due to pain and discomfort and, consequently, cannot support himself in a sustained sedentary job,

3. he is expected to develop arthritis which will further limit his already greatly reduced functioning,

4. he is currently unable to do even the physical conditioning exercises prescribed by Dr. Cravens due to the severity of pain in his back, legs, and hips,

5. the full extent of his injuries may not be known—he is young and in good physical shape. As he ages and as he is less able to be physically active, other limitations may show themselves developing from a lack of conditioning or deteriorating physical condition,

6. given his instability and lack of balance, the normal activities of daily living (bending, stooping, kneeling, stairs, reaching, walking in various weather conditions, etc.) all present a potential hazard and can be injury-producing at any turn."

Kancs argues the evidence was insufficient for an award of total permanent disability because there was no expert medical testimony referring to the permanency of Walker's injuries or Walker's ability to carry on reasonable types of employment.

A claimant is not qualified to testify to the permanency of condition of impairment, which is a medical question upon which only expert testimony is competent. *Coachmen Industries, Inc. v. Yoder* (1981), Ind.App., 422 N.E.2d 384, 392; *Kenwood Erec. Co. v. Cowsert* (1953), 124 Ind.App. 165, 167, 115 N.E.2d 507, 509.

"In the case of permanent partial impairment for example, the permanency of the condition may be exclusively within the province of the medical experts, but as to the fact of impairment itself, the injured man is perhaps the best witness." B. Small, *Workmen's Compensation Law of Indiana* § 12.6, p. 141 (1976 Supp.).

Although expert medical testimony may be required to demonstrate permanent impairment, the present case deals with permanent disability. The terms "disability" and "impairment" have distinct and precise legal meanings under Indiana's Worker's Compensation Act. "Impairment" refers to the loss of physical function. *Ind. Ins. Guar. v. William Tell Woodcrafters* (1988), Ind.App., 525 N.E.2d 1281, 1284. "Disability" relates to the capacity to work. *Spaulding v. International Bakers Serv.* (1990), Ind., 550 N.E.2d 307, 310.

States other than Indiana differ as to whether medical testimony is required to support a certain degree of disability. The explanation for the inconsistency is based on the state's definition of disability. In states where disability refers to loss of physical function (impairment in Indiana), medical testimony is necessary to prove a certain level of disability. *Yuba Heat Transfer v. Wiggins* (1981), Okla., 630 P.2d 783. In states where disability relates to the capacity to work, a worker's compensation panel can find a degree of disability higher than that supported by medical testimony.[2]

*Employers Mut. of Wausau v. Eidson* (1982) Colo, 646 P.2d 959;

2B A. Larson, Workmen's Compensation Law § 79.53 (1989 Ed.).

In Indiana, disability is not a purely medical question. Disability includes components of training, education, age, intelligence, economic opportunity, the inability to perform and obtain suitable work. 2B A. Larson, *supra*, § 79.52(d), 79.53. The vocational report by a certified rehabilitation counselor which incorporated medical evaluations by Walker's treating orthopedic surgeon indicated that Walker cannot be expected to work in the future and probably never will be able to work on a sustained basis. The vocational report provides the Worker's Compensation Board with evidence that Walker's injury left him unable to resume reasonable types of employment for the remainder of his life. The Worker's Compensation Board had sufficient evidence to support the permanent total disability award.

Affirmed.

GARRARD and STATON, JJ., concur.

---

**2.** Medical testimony is required to prove a causal relationship between a claimant's injury and a claimant's occupational activities if the connection is beyond the realm of layman's comprehension. 2B A. Larson, Workmen's Compensation Law § 79.54 (1989).