**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**JEFFREY STURM**
George C. Patrick & Associates, P.C.
Crown Point, Indiana

ATTORNEY FOR APPELLEES:

**DEIDRE L. MONROE**
Gary, Indiana

FILED
May 15 2013, 9:33 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARIA COLLAROS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1212-EX-1034 |
| | ) | |
| GARY COMMUNITY SCHOOL CORP., | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM INDIANA WORKER'S COMPENSATION BOARD
Case No. C-208402

May 15, 2013

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Maria Collaros filed an application for adjustment of claim with the Worker's Compensation Board of Indiana (the "Board") against her employer, Gary Community School Corporation ("GCSC"). Collaros sustained injuries in the course and scope of her employment with GCSC, and she presented the following issues in her application: does she need additional medical treatment, or has she achieved maximum medical improvement ("MMI"); is she permanently and totally disabled; if she is not permanently and totally disabled, is she entitled to a permanent partial impairment ("PPI") rating; and is GCSC responsible to pay certain medical bills. A Single Hearing Judge concluded that Collaros had achieved MMI; she is not totally disabled; she has a PPI rating of 3% of the whole person; and GCSC is obligated to pay certain medical bills. Collaros petitioned the full Board, which affirmed the Single Hearing Member's decision following a hearing. Collaros presents a single issue for our review, namely, whether the Board erred when it concluded that she is not permanently and totally disabled.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The parties stipulated to the following facts:

1. On May 4, 2010, Plaintiff was employed by Defendant as a food services worker.
2. Plaintiff suffered an accidental injury arising out of and in the scope of employment on May 4, 2010, when she slipped on ice in the freezer.
3. Plaintiff was paid TTD [temporary total disability] benefits at the rate of $142.23 per week from August 6, 2010, to November 23, 2010.
4. An IME [independent medical evaluation] was requested and provided by Dr. McComis.

5. TTD was again started and paid from April 26, 2011, to June 2, 2011, at the rate of $142.23.

6. Dr. McComis recommended epidural steroid injections on May 18, 2011.

7. Defendant sent Plaintiff back to Dr. Nenadovich who had already released Plaintiff at MMI.

8. Dr. Nenadovich found Plaintiff still at MMI and provided no more injections.

9. Plaintiff had planned to retire, but was terminated on October 7, 2011.

10. Plaintiff's employment with Defendant was terminated October 7, 2011.

11. Dr. McComis agreed with Dr. Nenadovich that Plaintiff was at MMI, with a work restriction of lifting no more than 10 pounds, if she refused further treatment.

Appellant's App. at 9-10.

The November 2010 Functional Capacities Evaluation ("FCE"), conducted by

Gani Azeez, P.T., stated:

At this time, Mrs. Collaros will not be able to meet the occasional and frequent lifting requirements of the job of a Food Service Worker as indicated in the US Department of Labor, her occasional and frequent lifting [restrictions are] 5-10 lbs and 3-5 lbs respectively. Job requires up to 50 lbs and 25 lbs of occasional and frequent lifting respectively. Her current physical capability is at "Sedentary work" compared to the "Medium Work" requirements of the job. Also, client will not be able to meet the frequent standing and walking requirement of the job as indicated by the client. Her ability to tolerate high lifting is limited by reduce[d] active Range of Motion of the Lumbar spine with weakness of the back extensions and hip extensions as trunk stabilizers. Client is not disabled at this time, with improved active [range of motion] of the Lumbar spine, improved strength of the trunk stabilizers her lifting tolerance will improve.

Id. at 98 (emphasis added).

The April 2011 IME, conducted by Dr. Gregory McComis, revealed a diagnosis of

spondylolisthesis with lumbar radiculopathy in the right hip and right leg. Dr. McComis

opined that Collaros had a pre-existing condition that was exacerbated by her slip and fall

3

at work.  Dr. McComis recommended an epidural injection, but he also indicated that if Collaros refused further treatment, he would "concur with Dr. Nenadovich['s] recommendation to place her at MMI and having a work restriction of no lifting more than 10 pounds." Id. at 60.

Finally, Collaros obtained a vocational assessment in February 2012, and Thomas Roundtree observed in relevant part as follows:

> Ms. Collaros resides with her husband who is retired. . . . On a normal day, she will rise about 7 am and go to bed about 9 pm.  She will make breakfast some days and will do the laundry with the help of her husband.  She does most of their cooking and she can run the sweeper for short times on good days when she is not in as much pain.  She does watch some TV, but does read a lot also, especially history and fiction.  She will use their computer to do some reading of Greek newspapers and do some internet surfing. . . .
>
> Ms. Collaros does have a high school education. . . .
>
> She worked for about 31 years for the [GCSC] as a Food Service Assistant.  She said she earned about $11/hr and worked about 25 hours a week.  She said she was on her feet most of the time and lifted up to 50 lbs. at most.  She would perform cooking, baking, serving, and cashiering.  She said the school system told her she had to be at 100% to return to work.  She said she did not believe there was any work she could do.
>
> Conclusions
>
> Ms. Collaros is a 66 year old lady who has worked for over the past 30 years as a Food Service Worker for a large school district.  The job has required performing work at the medium exertional level and is semi-skilled based on the variety of activities she was responsible for.  Now, according to the FCE and Dr. Nenadovich, she is restricted to sedentary work.  The FCE also indicated ability to only occasionally sit, up to 1/3 of the workday.  During the interview Ms. Collaros complained of and demonstrated problems with sitting very long at a time, rising from her seated position about three times during the hour and [a] half interview.  She does have a high school education and can read sufficiently, and has good use of her upper extremities.  However, the restrictions stated and complained of would not allow her to perform or sustain any sedentary employment that I am aware of.  She has no formal training beyond high

4

> school and her test results in spelling and math would indicate problems with further academic training. She has no office related training or work skills. <u>Therefore, it is my professional opinion that Ms. Collaros would not be able to perform and sustain any reasonable employment in her local labor market and would be permanently and totally disabled.</u> Unskilled sedentary employment usually involves some type of factory or production work, and she would not be able to sustain such employment.

Id. at 88 (emphases added).

At the hearing on her application for adjustment of claim, Collaros testified in relevant part that she can walk "maybe a mile sometimes, maybe less," and she has flown to Greece, an eight to ten-hour flight, twice since the accident. Transcript at 9. In addition, whereas Roundtree observed that Collaros had cashiered in her job for GCSC and used a computer to read Greek newspapers and search the internet, Collaros testified that she did not know how to run a cash register or how to "work the computer." Id. at 17. Finally, when asked whether she would "be willing to go back to work" if GCSC "had a job that [she] could do with [her] restrictions," Collaros stated merely, "I cannot answer that." Id. Collaros did not submit any evidence that she had attempted to find other employment since the accident.

The Board adopted the Single Hearing Member's findings of fact, including that Collaros "testified she has flown on an 8 hour flight to Greece at least twice since the May, 2010, injury, thereby tolerating sitting for long periods of time," and that "[u]nder cross examination, Plaintiff refused to answer whether she would agree to return to work if a position with her restrictions was offered." Appellant's App. at 12. And the Board adopted the Single Hearing Member's conclusions of law:

1. Plaintiff is at MMI, as stated by Dr. Nenadovich and Dr. McComis.

5

2. Plaintiff is not totally disabled as stated in her FCE report by Gani Azeez, PT and Dr. Nenadovich.
3. Plaintiff has a permanent partial impairment rating of 3% to the whole person by Dr. Nenadovich, a Board Certified Orthopedic Surgeon.
4. Defendant is obligated and willing to pay any emergency and/or authorized medical expenses incurred by Plaintiff as those medical expenses relate to the May 2010 injury.

Id. at 12-13. The Board awarded Collaros a 3% PPI rating of the whole person and ordered GCSC to pay "any authorized and outstanding medical expenses incurred as related to this injury[.]" Id. at 13. This appeal ensued.

## DISCUSSION AND DECISION

In challenging the Board's decision, Collaros confronts a stringent standard of review. When we review a decision of the Full Worker's Compensation Board, "we are bound by the factual determinations of the Board and will not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion." Howard v. U.S. Signcrafters, 811 N.E.2d 479, 481 (Ind. Ct. App. 2004). We must disregard all evidence unfavorable to the decision and examine only the evidence and the reasonable inferences therefrom that support the Board's findings. Id. We will not reweigh the evidence nor judge the credibility of the witnesses. Id.

Collaros' sole contention on appeal is that the Board erred when it denied her request for permanent total disability ("PTD") benefits. To establish a permanent total disability, an injured employee is required to prove that she cannot carry on reasonable types of employment. Perez v. U.S. Steel Corp., 428 N.E.2d 212, 215-16 (Ind. 1981). The reasonableness of the employee's opportunities are to be assessed by her physical and mental fitness for them and by their availability. Id. at 216. Here, Collaros bore the

6

burden of proving that she cannot carry on reasonable types of employment to justify recovery for a permanent total disability. See id. Once plaintiff has established the degree of obvious physical impairment, coupled with other facts such as the claimant's capacity, education, training, or age, and has established that she has attempted unsuccessfully to find work or that it would be futile to search for work in light of her impairment and other characteristics, the burden of producing evidence that reasonable employment is regularly and continuously available then rests on the employer. Walker v. State, 694 N.E.2d 258, 265 (Ind. 1998).

Collaros maintains that the Board should have awarded her PTD benefits based upon the following evidence: 1) the vocational expert's report stating that she is unable to work; 2) the medical opinions of Dr. Nenadovich and Dr. McComis; 3) the FCE report; 4) two letters from GCSC stating that it did not have employment that could accommodate her limitations; and 5) Collaros' testimony that she cannot work. Further, Collaros states that having met her burden of proof, that burden shifted to GCSC to present evidence "that reasonable employment is regularly and continuously available." See Walker, 694 N.E.2d at 265. Collaros contends that GCSC failed to satisfy its burden of proof. GCSC contends that Collaros did not meet her burden of proof or, in the alternative, that GCSC presented evidence sufficient to show that Collaros is able to find reasonable employment.

Collaros has not sought employment since the accident. But she maintains that the evidence shows that any job search would be futile. See Walker, 694 N.E.2d at 265 (holding plaintiff has burden to show that she has attempted unsuccessfully to find work

7

or that it would be futile to search for work in light of her impairment and other characteristics). In support of that contention, she points out that she is sixty-seven years old; "has very little education and office related skills"; is restricted from lifting, pushing, or pulling anything greater than ten pounds; and must avoid prolonged walking, prolonged standing, squatting, kneeling, repetitive bending, and repetitive twisting. Brief of Appellant at 11.

But the evidence shows that Collaros is a high school graduate; can walk up to a mile at a time; can travel by plane for eight to ten hours at a time, which requires long periods of sitting; uses a computer daily for personal use; cooks and does some house cleaning; and knows how to operate a cash register. Indeed, Collaros sustained a PPI rating of only 3% of the whole person.[1] And while she has permanent restrictions on lifting and other activities, both Azeez and Dr. Nenadovich concluded that she is capable of sedentary employment. Finally, as the Board found, Collaros refused to answer when asked whether she would be willing to work for GCSC if it had employment for her that would accommodate her work restrictions. We hold that, in light of the evidence, Collaros has not demonstrated that it would be futile to search for work in light of her impairment. Thus, she did not sustain her burden of proof under Walker, and the burden

---

[1] Collaros analogizes her case to that in Walker, where the plaintiff had sustained a PPI rating of 25% of the whole person. 694 N.E.2d at 263. We also note that the plaintiff in Walker had an eighth-grade education and suffered from such severe pain that she needed to lie down for forty-five minutes at a time five or six times per day. Id. at 262.

of proof did not shift to GCSC.  We cannot say that the Board erred when it denied

Collaros' request for PTD benefits.[2]

Affirmed.

BAILEY, J., and BARNES, J., concur.

---

[2] In <u>Walker</u>, our supreme court observed that while "what constitutes reasonable employment is often a question of fact, at the outer perimeters the question is one of law."  694 N.E.2d at 266.  There, the court's analysis turned on the undisputed facts in that case.  <u>Id.</u>  Here, in contrast, there are several facts in dispute bearing on Collaros' ability to carry on reasonable types of employment, namely, her ability to sit and walk for prolonged periods of time and her ability to operate a computer and/or cash register.  Thus, here, what constitutes reasonable employment is a question of fact.