**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Mar 06 2014, 9:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**HEATHER FALKS**
**T. REG HESSELGRAVE**
Palguta Falks & Hesselgrave
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**BRIDGET A. ZEIER**
**MARTIN T. SPIEGEL**
Spiegel & Cahill P.C.
Hinsdale, Illinois

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ERIC KEITH, | ) | |
| | ) | |
| Appellant/Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1308-EX-758 |
| | ) | |
| INDIANA BELL, | ) | |
| | ) | |
| Appellee/Defendant. | ) | |

APPEAL FROM THE FULL WORKER'S COMPENSATION BOARD OF INDIANA
Application No. C-206899

**March 6, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Eric Keith appeals the Worker's Compensation Board's ("the Board") decision that he was not entitled to additional benefits under the Indiana Worker's Compensation Act. He contends that the Board's determination that he was not permanently and totally disabled was unsupported by the evidence. Finding that the Board's determination was supported by the evidence, we affirm.

**Facts and Procedural History**

Keith was working as a connection technician in October 2008 for Indiana Bell. One of its customers in Centerton, Indiana, did not have internet service. Because the house had old wiring, Keith needed to go into a crawl space to retrieve a wire. After retrieving the wire, he attempted to exit the crawl space on his back. As he was trying to exit, he "felt something, like somebody shot [him] in the back with a red hot poker. [He] felt a lightning strike down [his] leg." Tr. p. 8. He then rolled over and tried to pull himself out of the crawl space. As he did so, he "felt a loud pop in [his] lower back." *Id.* Keith was eventually able to retrieve his cell phone and called a co-worker, who called 911. Keith was removed from the area on a stretcher.

As a result of his injuries, Keith sought treatment from Dr. Derron Wilson, Dr. Michael Burt, and Dr. Eric Potts.[1] Keith had several surgeries to correct the problem in his back. In February 2009, he had surgery to remove a herniated disk on the right side of his spine at L4-5 and L5-S1. Two months later, Keith had another surgery to remove a herniated disk at T8-9 on the right portion of his spine. In October 2009, a single lead

---

[1] Dr. Burt and Dr. Potts have since retired. Tr. p. 15.

spinal stimulator was implanted in Keith's back, resulting in a ninety-percent improvement during the trial period. Appellant's App. p. 2. One month later, a spinal-cord stimulator was permanently implanted. Dr. Wilson placed Keith on maximum medical improvement in December 2009.

Indiana Bell then requested that Keith see Dr. Rick Sasso. Dr. Sasso found no evidence of ongoing neurologic abnormalities and recommended that Keith should "progress his activities as tolerated including a return to gainful employment . . . ." Tr. p. 36. However, Dr. Sasso noted that he believed Keith would have significant limitations due to subjective pain complaints. *Id.*

Keith disagreed with Dr. Sasso's assessment and requested a Worker's-Compensation-Board-appointed Independent Medical Evaluation. Appellant's App. p. 2. The Board-appointed Independent Medical Evaluation was performed by Dr. John Shay. Dr. Shay diagnosed Keith with chronic thoracic syndrome and chronic lumbar radicular syndrome. Dr. Shay concluded that Keith should be reevaluated by a qualified physician to determine whether any adjustment of his spinal-cord stimulator would be appropriate and to provide a permanent impairment rating. Tr. p 32-33; Appellant's App. p. 2.

Dr. Wilson provided the recommended follow-up care and determined that Keith was at maximum medical improvement in October 2011. He also referred Keith to Dr. Nancy Lipson, a board-certified physical medicine and rehabilitation specialist, to provide a permanent partial impairment rating.

Dr. Lipson concluded that "[Keith] is not capable of returning to medium or heavy work. . . . I believe the most that he should be expected to lift would be 15 pounds on a

very occasional basis." Tr. p. 38. Moreover, she concluded that any work he could do would involve sitting most of the time. She further concluded that "[h]e should not have to do any significant bending, reaching with his right arm, crouching, crawling, ladders or other unprotected heights." *Id.* According to Dr. Lipson, "[o]n a frequent basis, I would feel that he could handle at most five pounds and this should preferably be sitting without his arms outstretched in front of him and without doing side-to-side motions." *Id.*

Dr. Lipson also determined an appropriate impairment rating for Keith. Because of his severe pain, right-leg weakness, and need for long-term pain medications and a spinal-cord stimulator, she determined that Keith has a thirty-percent whole-person impairment. *Id.* She also determined that Keith was at maximum medical improvement.

Keith then requested to see Michael Blankenship, a vocational rehabilitation specialist. Blankenship, who is not a doctor, interviewed Keith to determine his ability to engage in reasonable employment. Before the interview, Blankenship only reviewed the opinion of Dr. Lipson and did not review any other medical information. *Id.* at 24. Based on his interview with Keith and Dr. Lipson's medical opinion, Blankenship concluded that "Keith is obviously an individual who has developed marketable skills but the severity of his medical conditions is such that he has been precluded from competing for any type of position defined by the U.S. Department of Labor." *Id.* at 26. Specifically, Blankenship concluded that, "[w]hile it may appear that he has the capacity to perform sedentary types of employment, it is my opinion that he could not sustain himself during an eight hour work day." *Id.*

4

As a result of these assessments, Keith was paid $480.75 per week in temporary total disability benefits from November 2008 to December 2011. The total amount he was paid during this period was $71,631.75. Appellant's App. p. 2.

Keith filed an application for an adjustment of claim with the Indiana Worker's Compensation Board. In February 2013, Hearing Member Krysten LeFavour heard Keith's claim. At the hearing, Keith used a cane to walk and frequently changed positions in his chair. He explained that he had not looked for employment because he could only work for one or two hours before having to lie down. Moreover, he could only sit for forty-five minutes at a time, stand for one hour with a cane, walk one block, and lift fifty pounds at a time. Appellant's App. p. 5, Tr. p. 13.[2] On cross-examination, Keith admitted that no doctors had given him documentation stating that he should not work. Tr. p. 18.

Regarding his marketable skills, Keith explained that he had graduated high school and completed fifty-two hours of college credit in biology, zoology, and anthropology. Additionally, he has a certificate of completion from Ivy Tech Community College in body and mechanical work.

Based upon Dr. Lipson's evaluation of Keith, Board Member LeFavour determined that Keith had sustained a thirty-percent whole-person impairment. She also concluded that Keith had not met his burden in proving that he is permanently and totally disabled. In reaching this determination, she discounted Blankenship's opinion "because of the inaccurate history he was given and the fact that he did not review all of the pertinent

---

[2] Although in his brief, Keith states that he was limited to lifting fifteen pounds, the Worker's Compensation Board's findings state that he claimed he could only lift fifty pounds at a time. Appellant's App. p. 5.

medical information." Appellant's App. p. 6. Instead, she concluded that Keith is "articulate and intelligent and the evidence shows that he is able to engage in light and/or sedentary work." *Id.*

Member LeFavour also determined that Keith had reached maximum medical improvement and is entitled to temporary total disability through November 2011 at a rate of $480.75 per week, which he had already been paid. She also determined that Keith was entitled to total disability for approximately six weeks after his reversion surgery for the spinal-cord stimulator. As a result of Keith's thirty-percent permanent partial impairment, she concluded that he was entitled to an additional award of $45,050.

In June 2013, the Board affirmed Board Member LeFavour's award and adopted her findings and denial of permanent total disability with one member dissenting. *Id.* at 8-9.

Keith now appeals.

### Discussion and Decision

Keith argues that the Board's determination that he is not permanently and totally disabled is unsupported by the evidence.[3] When reviewing the decision of the Worker's Compensation Board, we review the Board's decision "to determine whether substantial evidence, together with any reasonable inferences that flow from such evidence, supports the Board's findings and conclusions." *Young v. Marling*, 900 N.E.2d 30, 34 (Ind. Ct. App. 2009). We do not reweigh the evidence or judge the credibility of witnesses. *Id.* In

---

[3] Keith also argues that the Board made no finding of fact regarding his ability to find reasonable employment. Appellant's Reply Br. p. 10. However, in its Conclusions, the Board states that "the evidence shows that he is able to engage in light/sedentary work." Appellant's App. p. 6. This statement is a specific finding revealing the Board's determination that Keith was able to find reasonable employment.

evaluating the Board's decision, we employ a two-tiered standard of review. *Wholesalers, Inc. v. Hobson*, 874 N.E.2d 622, 627 (Ind. Ct. App. 2007). First, we review the record to determine if there is any competent evidence of probative value to support the Board's findings. *Id.* We then examine the findings to see if they are sufficient to support the decision. *Id.*

To establish a total disability, an injured employee must prove that he cannot carry on reasonable types of employment. *Perez v. U.S. Steel Corp.*, 428 N.E.2d 212, 215-16 (Ind. 1981). The reasonableness of the type of employment is determined by assessing the individual's "physical and mental fitness for [the opportunities] and by their availability." *Id.* Here, Keith bore the burden of proving that he cannot carry on reasonable types of employment to justify recovery for a permanent total disability. *See id.* "Once plaintiff has established the degree of physical impairment, coupled with other facts such as the claimant's capacity, education, training, or age, and has established that she has attempted unsuccessfully to find work or that it would be futile to search for work in light of her impairment and other characteristics, the burden of producing evidence that reasonable employment is regularly and continuously available then rests on the employer." *Walker v. State, Muscatatuck State Dev. Ctr.*, 694 N.E.2d 258, 265 (Ind. 1998).

Keith maintains that the Board should have awarded him permanent and total disability benefits. Essentially, Keith argues that the totality of the evidence relied upon by the Board does not support its conclusion. He maintains that the Board should have awarded him permanent and total disability benefits based upon: 1) the vocational expert's testimony stating he is unable to work; 2) the medical opinion of Dr. Lipson; and 3) Keith's

7

testimony that he cannot work. Further, Keith argues that, having met his burden of proof, the burden should shift to Indiana Bell to present evidence "that reasonable employment is regularly and continuously available." *See id.* He further contends that because Indiana Bell did not challenge Blankenship's testimony and because Dr. Lipson was the only physical medicine rehabilitation specialist that examined him, the Board should have afforded their opinions greater weight. Indiana Bell argues that the evidence supports the Board's conclusion that Keith is not totally and permanently disabled.

Keith has not sought employment since the accident. But he maintains that the totality of evidence shows that no reasonable employment exists as a matter of law. *See id.* at 265 (holding plaintiff has burden to show that she has attempted unsuccessfully to find work *or* that it would be futile to search for work in light of her impairment and other characteristics). In support of that contention, he states that he is fifty years old; has a history in medium to heavy work; cannot return to his previous job or work of similar capacity; is limited to lifting fifty pounds occasionally and should not lift more than ten pounds; should not bend, reach, crouch, or twist; needs to change positions every half hour and can only stand for a limited amount of time; and he feels he can only work for one or two hours before lying down. Appellant's Br. p. 10-11; Appellant's App. p. 5.

But the evidence shows that Keith is a high-school graduate; has taken fifty-two credit hours of college courses in biology, zoology, and anthropology; can lift up to a total of fifty pounds; and is able to drive independently. Indeed, Dr. Lipson was asked to give an impairment rating and concluded that he had a partial impairment rating of thirty percent. Moreover, none of the doctors who examined Keith stated that he was unable to

work.  In fact, Dr. Sasso concluded that "he is able to return to gainful employment."  Tr. p. 34.

This case is distinguishable from *Walker*.  Although Walker had only a permanent partial impairment rating of twenty percent and had similar lifting restrictions, she was significantly less educated.  She had only an eighth-grade education and read at the level of a seventh grader.  *Walker*, 694 N.E.2d at 260.  Moreover, in *Walker*, the vocational expert's opinion was not discounted.  In that case, the vocational expert stated that Walker "had trouble urinating, dressing herself, making the bed, and running a vacuum cleaner. [Walker] told [the vocational expert] that she could not stand more than ten minutes without experiencing pain in her back and right leg, and could not sit for more than several minutes."  *Id.* at 262.  Even if the Board had not discounted Blankenship's report, Keith did not complain of similar types of limitations to Blankenship.  Finally, in *Walker* an occupational therapist stated that "locating gainful employment within the limitations [Walker] demonstrated during this evaluation would be very difficult."  *Id.* at 263.  No doctor who evaluated Keith made a similar conclusion.

Keith also argues that the board "apparently relied heavily on Dr. Sasso's reports without any specific finding on why the report should control . . . ."  Appellant's Br. p. 9. He also argues that Blankenship's report should not have been discounted because the inaccurate history Blankenship was given and the fact that he did not review all of the pertinent medical evidence is not material to Blankenship's conclusions.  These arguments are simply a request to reweigh the evidence, which we may not do.

We conclude that Keith has not demonstrated that it would be futile to search for work in light of his impairment.  We also conclude that there was competent evidence to support the Board's findings and that the findings were sufficient to support the decision.

Affirmed.

RILEY, J., and MAY, J., concur.